875 So.2d 58 (2004)
STATE of Louisiana
v.
James TAYLOR.
No. 2003-K-1834.
Supreme Court of Louisiana.
May 25, 2004.
*59 Charles C. Foti, Jr., Attorney General, Eddie J. Jordan, Jr., District Attorney, Battle Bell IV, Valentin M. Solino, Kristen A. Keller, for applicant.
Sherry Watters, New Orleans, for respondent.
VICTORY, J.
We granted this writ to determine whether the trial judge abused his discretion in denying a challenge for cause of a prospective juror such that reversal of defendant's conviction and sentence for second-degree murder by the court of appeal was warranted. After reviewing the record and the applicable law, we find that the trial judge did not abuse his discretion in denying defendant's challenge for cause and therefore reverse the judgment of the *60 court of appeal and reinstate defendant's conviction and sentence.

FACTS AND PROCEDURAL HISTORY
On June 8, 2000, defendant James Taylor ("Taylor") was indicted for the seconddegree murder of Walter Ray, in violation of La. R.S. 14:30.1.[1] The State alleged that Taylor shot Ray, a co-worker, three times at a convenience store shortly after the two had engaged in a physical altercation at work. Taylor claimed self-defense. Taylor was found guilty as charged by a twelve-person jury on September 6, 2002, and was sentenced to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.
Taylor appealed his conviction and sentence alleging, among other things, that the trial court erred in denying his challenge for cause of prospective juror No. 8, David Lee Oliver. After the initial voir dire of the first panel of jurors, which was not transcribed, defendant challenged Mr. Oliver for cause:
I think he's a challenge for cause, Judge. In voir diring [sic] him virtually every replyI don't know if he's just trying to get off the jury or if he is sincere in his beliefs. Basically, every major threshold issue was contrary responses.
THE COURT:
I'm going to grant cause as to Mr. Oliver. I think that he's justhas a hard timeI'll allow you to bring him back but I'm not going to go into a big I think he has a hard time grappling with the issue and the doctrine of selfdefense.
Do you want to ask him a question?
[STATE ATTORNEY]:
I just want to make a quick argument if I could, Judge. His
THE COURT:
I know what your argument is. You already made it at the bench, so if you want to ask him a question
[STATE ATTORNEY]:
No. It's different because Ithe cause that [defense attorney] sought was on the question of multiple gunshots. "Would multiple gunshots affect you and would that be a determining factor?"
And he said, "Yes, it would be." The law doesn't say that a juror that believes multiple gunshots are unwarranted you can't serve.
THE COURT:
Do you want to ask Mr. Oliver some questions?
[DEFENSE ATTORNEY]:
Let me just, Judgethat's notthat was the final
THE COURT:
Yeah. I think it's all in totality. I'll let you try to rehabilitate him. That's what this is for.
[STATE ATTORNEY]:
I'd like that opportunity, Judge.
THE COURT:
Call back Mr. Oliver. (The juror comes into chambers.)
Thank you, Mr. Oliver, for coming back you can have a seat right here. Mr. Oliver, there were some questions that came up during the whole self-defense, aggressor doctrine, justifiable homicide back and forth, and my question to you basically is: If you are selected as a juror and you take the oath, knowing that the law in Louisiana recognizes *61 the doctrine of self-defense and justifiable homicide, could you fairly and impartially give the defense the opportunity to present that defense to you and listen to it?
JUROR OLIVER:
To present the defense? Yes.
THE COURT:
And do you have a problem with it? I know that there was some back and forth with some of the issues. Do you have a problem with theand if you do that's fine. There's no right or wrong answer on that.
Do you have a problem with the issue or the doctrine of justifiable homicide?
JUROR OLIVER:
With the actualis there a problem with justifiable homicide?
THE COURT:
Uh-huh. Knowing that the law in certain situations that are clearly set forth say that there is an exception to an act otherwise being a murder
JUROR OLIVER:
No.
THE COURT:
if it's done, again, because that person reasonably believes that he'd be in imminent danger of great bodily harm or death.
JUROR OLIVER:
I agree with that.
THE COURT:
You can follow the law on that?
JUROR OLIVER:
Yes.
THE COURT:
The issue of whether there be one gunshot or multiple gunshots, is that a factor that you could give consideration to?
JUROR OLIVER:
I could give consideration to. But the question, the way it was put was: Does it give youthe way I took it, the way he was asking was: Does it give you an assumption of difference. At that point when he's asking me that, yes, just a number of multiple gunshots.
THE COURT:
So you think that if this were a case where there were multiple gunshots that would immediatelyyou would immediately say, "I can't accept self-defense because there was more than one shot?"
JUROR OLIVER:
No, just what my assumption would be.
THE COURT:
Does either side have any questions? Mr. Milner?
[STATE ATTORNEY]
I don't have any.
THE COURT:
Mr. Sauviac?
DEFENSE ATTORNEY:
There was one point during examination out there where we talked about you said, "Shoot him in the leg," and I don't remember all the other ins and outs. Is that somethinghow are you reconciling that to the issues of what the judge is saying about a general defense of self-defense or justifiable homicide? Is that something that there's a distinction in your mind between or something that you have a dividing line?
JUROR OLIVER:
Not necessarily a dividing line. It's just from what your explanation of what justifiable defense was I agree with, but I don't agree withyou would have to really prove to me that you could not get away from the situation and that the only way for you to escape death was to kill that person.
THE COURT:

*62 And you would impose, Mr. Oliver, you would impose a reasonable person standard and not necessarily your own if your own may be different than that?
JUROR OLIVER:
Right.
THE COURT:
You would impose just what a reasonable person, accepting a community standard on that would be?
JUROR OLIVER:
Yes.
THE COURT:
Thank you, Mr. Oliver. (The juror leaves chambers.)
I'm going to deny a challenge for cause by the defense as to Mr. Oliver.
[DEFENSE ATTORNEY]:
Note our objection.
Defendant then used a peremptory strike to strike Mr. Oliver and subsequently exhausted his peremptory challenges before the selection of the eighth juror.
The court of appeal found that the trial judge had erred in denying the challenge for cause based on Mr. Oliver's statement that "you would have to really prove to me that you could not get away from the situation and that the only way for you to escape death was to kill that person." State v. Taylor, 02-2011 (La.App. 4 Cir. 6/11/03), 850 So.2d 5, 19. The court of appeal reasoned this indicated that Mr. Oliver would require defendant to bear the burden of proving that he acted in self-defense and the trial court's last two questions simply ascertained that, in holding defendant to this burden, Mr. Oliver would impose a reasonable person standard. Id. Thus, the court of appeal reversed defendant's conviction and sentence on this basis. Id. We granted the State's writ application to consider whether the trial court erred in denying defendant's challenge for cause of this prospective juror. State v. Taylor, 03-1834 (La.1/16/04), 864 So.2d 612.

DISCUSSION
In order for a defendant to prove reversible error warranting reversal of both his conviction and sentence, he need only show the following: (1) erroneous denial of a challenge for cause; and (2) use of all his peremptory challenges. State v. Hart, 96-0697 (La.3/7/97), 691 So.2d 651, 656; State v. Maxie, 93-2158 (La.4/10/95), 653 So.2d 526, 534. Prejudice is presumed when a defendant's challenge for cause is erroneously denied and the defendant exhausts all his peremptory challenges. See e.g., State v. Ball, 00-2277 (La.1/25/02), 824 So.2d 1089, 1102; State v. Jacobs, 99-1659 (La.6/29/01), 789 So.2d 1280, 1283; State v. Taylor, 99-1131 (La.1/17/01), 781 So.2d 1205; State v. Anthony, 98-0406 (La.4/11/00), 776 So.2d 376, 391; State v. Cross, 93-1189 (La.6/30/95), 658 So.2d 683; State v. Robertson, 92-2660 (La.1/4/94), 630 So.2d 1278, 1280-81.[2] An erroneous ruling depriving an accused of a peremptory challenge violates his substantial rights and constitutes reversible error. Ball, supra at 1102; Cross, supra at 686.
In this case, it is undisputed that defendant exhausted all his peremptory challenges before the selection of the eighth juror; therefore, we must ascertain whether the trial court erred in denying defendant's challenge for cause regarding prospective juror Oliver. A trial court is vested with broad discretion in ruling on *63 challenges for cause and these rulings will be reversed only when a review of the voir dire record as a whole reveals an abuse of discretion. Ball, supra at 1102; Cross, supra; Robertson, supra at 1280. A trial judge's refusal to excuse a prospective juror for cause is not an abuse of his discretion, notwithstanding that the juror has voiced an opinion seemingly prejudicial to the defense, when subsequently, on further inquiry or instruction, he has demonstrated a willingness and ability to decide the case impartially according to the law and the evidence. Cross, supra; Robertson, supra.
La.C.Cr.P. art. 797 governs when a prospective juror may be challenged for cause, providing in pertinent part:
The state or the defendant may challenge a juror for cause on the ground that:
...
(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence.
...
(4) The juror will not accept the law as given to him by the court;
In a homicide case such as this, in which the defendant asserts that he acted in self-defense, the state has the burden of establishing beyond a reasonable doubt that he did not act in self-defense. State v. Brown, 414 So.2d 726, 728 (La.1982). Defendant claims, and the court of appeal agreed, that Mr. Oliver's statement that "you would have to really prove to me that you could not get away from the situation and that the only way for you to escape death was to kill that person" indicated that he was not impartial and that he would not accept the law on self-defense because he would require defendant to prove he had acted in self-defense.
We find that, despite Mr. Oliver's statement in response to defense counsel's questions that "you would really have to prove to me ...," a review of the voir dire transcript as a whole reveals that he demonstrated a willingness and ability to decide the case impartially according to the law and the evidence. His statement, placed in context, was made in response to defense counsel's hypothetical questions concerning whether the number of gunshots would negate the defendant's claim of self-defense. Specifically, defense counsel asked Mr. Oliver if he drew a distinction based on that hypothetical question. Although Mr. Oliver appeared to assume the presence of multiple gunshots might be incompatible with justifiable homicide, he also indicated that there was no "dividing line" in his mind and further reiterated his acceptance of defense counsel's explanation of justifiable homicide.
Further, in this case, the juror's answers appear to be brought about "more from a lack of understanding of the law than bias," and grounds for cause do not exist under these circumstances because a juror is not expected to be familiar with legal terms nor to "understand jurisprudential distinctions in an abstract context." Ball, supra at 1109 (cites omitted). In this case, the fact that Mr. Oliver said "you would have to really prove to me" that defendant could not get away from the situation does not indicate that he would not apply the law as given or was biased. In light of his other responses that he would follow the law as given and agreed with the doctrine of justifiable homicide, his statement more accurately reflects his *64 lack of understanding of the exact burdens of proof in a homicide case where the defense is self-defense. In addition, the fact that the trial judge then asked the juror if he would apply a reasonable person standard in imposing that burden of proof, instead of informing the juror that it was the state, and not the defendant, that had the ultimate burden of proof in a homicide case, does not change our analysis. It does not indicate that Juror Oliver would not correctly require the state to bear the burden of proof when ultimately given the proper jury instructions at trial. Further, defense counsel never attempted to have the trial judge correct the juror's mistaken assumption, although he had ample opportunity to do so, and only noted a general objection to the denial of the challenge for cause, instead of specifically objecting on the grounds that the prospective juror indicated that he would require defendant to bear the burden of proof.
Moreover, "voir dire does not encompass unlimited inquiry by defendant into all possible prejudices of prospective jurors, including their opinions on evidence, or its weight, hypothetical questions, or questions of law that call for any prejudgment of supposed facts in the case." Ball, supra at 1110. "Louisiana law clearly establishes that a party interviewing a prospective juror may not ask a question or pose a hypothetical which would demand a commitment or pre-judgment from the juror or which would pry into the juror's opinions about issues to be resolved in the case." Id. "It is not proper for counsel to interrogate prospective jurors concerning their reaction to evidence which might be received at trial." State v. Williams, 230 La. 1059, 89 So.2d 898, 905 (1956); see also State v. Smith, 216 La. 1041, 45 So.2d 617 (1950) ("hypothetical questions and questions of law are not permitted in the examination of jurors which call for a pre-judgment of any supposed case on the facts").
Here, the questions asked by defense counsel directly referred to key facts in this case and called for a prejudgment or commitment by the prospective juror regarding those facts. In fact, the prosecution objected earlier to defense counsel's line of questioning regarding the number of shots fired; however, the trial court overruled the objection. In addition, Mr. Oliver's responses to the court regarding his thoughts on the number of gunshots fired in self-defense related directly to questions defense counsel had asked him earlier on voir dire. Thus, the appellate court's reliance on Mr. Oliver's response to an improper hypothetical question as a ground for reversal was improper. Furthermore, the voir dire transcript as a whole shows that after further questioning by the court, Mr. Oliver understood the concept of self-defense and that a person could be justified in killing another person in certain situations. With this information, Mr. Oliver testified that he could judge the facts of the case according to a reasonable person standard. Thus, contrary to the court of appeal's finding, the trial court did not abuse its discretion when it denied the defendant's challenge for cause. DECREE
For the reasons stated herein, the judgment of the court of appeal is reversed and defendant's conviction and sentence are reinstated.
REVERSED; CONVICTION AND SENTENCE REINSTATED.
NOTES
[1] Thea Williams was also indicted for that murder but the trial court granted Williams' Motion to Sever. The charge against her was eventually amended to accessory after the fact to second-degree murder and she entered a guilty plea.
[2] The rule is now different at the federal level. See United States v. Martinez-Salazar, 528 U.S. 304, 120 S.Ct. 774, 145 L.Ed.2d 792 (1/19/00) (exhaustion of peremptory challenges does not trigger automatic presumption of prejudice arising from trial court's erroneous denial of a cause challenge).