MAX N. TOBIAS, JR., Judge.
hThe defendant, Charles Andrews (“Andrews”), was charged by bill of information with the attempted first degree murder of Scott Sosely (“Sosely”), in violation of La. R.S. 14:27 and 14:30. Andrews pleaded not guilty at his 17 April 2009 arraignment. The trial court denied his motion to suppress the identification. Andrews was found guilty as charged by a twelve-person jury on 18 March 2010. He filed a motion for post-verdict judgment of acquittal on 6 April 2010. On that same date he filed a motion for, and was granted, an appeal. On 14 May 2010, the defendant was sentenced to fifty years at hard labor, without benefit of probation, parole, or suspension of sentence. On 20 October 2010, the trial court denied the defendant’s motion for post-verdict judgment of acquittal.

FACTS

Andrews was charged with, tried for, and convicted of the 7 January 2009 attempted first degree murder of Sosely.
Cindy Woods, New Orleans Police Department (“NOPD”) custodian of records for the communications division, identified State Exhibit S-l, an incident recall, No. A08161-09, pertaining to an armed robbery reported from 3900 Hamilton Street in New Orleans at approximately 8:52 p.m. on 7 January 2009. [ 2Ms. Woods also identified an audiotape of a 911 call associated with that incident recall.
NOPD Detective Christopher Harris testified that he responded to an aggravated battery call in the 3900 block of Hamilton Street on 7 January 2009. The victim, later identified as Sosely, was lying at the corner of Hamilton and Dixon Streets, in front of 3901 Hamilton Street. He had sustained two gunshots wounds to his chest and one to his hip. The victim’s Chevrolet Blazer was parked in the 3900 block of Hamilton Street. Sosely had driven it there. Detective Harris identified photographs of the scene and items of evidence collected at the scene, including two .45 auto spent cartridge casings found in the victim’s vehicle and a spent bullet found in the street nearby. He did not speak with Sosely until 11 January 2009, when he visited him in the hospital, for the victim had been in critical condition until that time. Detective Harris’s investigation led him to identify Andrews as a suspect. *123 He presented the victim with a photographic lineup on 5 February 2009; Sosely immediately identified the defendant.
Detective Harris admitted on cross examination that there was no physical evidence linking Andrews to the shooting of the victim. He confirmed that during the course of his investigation he learned the alleged perpetrator’s nickname, “Big D.” He also confirmed that he ran the nickname through the NOPD’s “MOTIONS” computer system, but “Big D” did not come up as a nickname for Andrews. He also confirmed that none of the persons for whom “Big D” did come up as a nickname matched the approximate age description of the perpetrator provided by the victim. The detective acknowledged that the victim admitted to him that he was a drug user. He believed the victim was on pain medication at the time he presented the victim with the photographic lineup. No other witness, save RSosely, identified Andrews as the perpetrator. Asked if there was any blood found inside the victim’s Chevrolet Blazer, Detective Harris said he believed there were two bits of flesh on the lower driver’s side panel. There were no bullet holes in the Blazer, and no spent bullets/pellets on the driver’s side.
Detective Harris stated on redirect examination that one of the crime scene photos depicted a pool of blood at the intersection of Hamilton and Dixon Streets, with a trail of blood droplets leading from the Blazer to that location. No weapon was recovered at the scene or on the victim.
The victim, Sosely, confirmed that he had been convicted in 1985 of attempted robbery, in 1998 for attempted possession of a firearm by a convicted felon, and in 2005 for theft. He was not employed because he was disabled as a result of this shooting. On the day of the shooting he purchased a vehicle with insurance proceeds from an accident. With those funds he also paid a few bills and contacted Andrews to pay off a $60 debt for marijuana that he had purchased from him. He had been introduced to Andrews by someone and had not known the defendant’s name. He had been to Andrews’s Marre-ro, Louisiana residence three or four times. When he wanted to contact Andrews he would call him on his cell phone.
On the night of the incident, Andrews asked him, Sosely, for a ride to the east-bank. The victim paid Andrews what he owed him for the marijuana. They followed another car to the eastbank of New Orleans. Both vehicles stopped. Andrews got out of the victim’s car and got into the other vehicle. Andrews exited the other vehicle and returned to the victim’s car wearing his hoodie over his head. The other car drove off. The defendant entered the victim’s car through the passenger side and ordered the victim to give him the rest of the money in the Rvictim’s possession. The victim bolted out the driver’s side door. Andrews shot him twice as he was fleeing. The victim identified photos of the crime scene, including one of the inside of the Chevrolet Blazer’s driver’s side door, which had what the victim described as “part of my arm” on it. Andrews first shot the victim in the left scapula, with the bullet exiting his throat right below his collar bone. He said his lungs collapsed and he could not breathe; that was why he collapsed in the street. Sosely said that after he collapsed Andrews stood over him with the gun again asking where the rest of his money was. Sosely told him that it was in his left pocket. At that point Andrews fired a shot into the victim’s left hip, and then reached into the victim’s pocket, grabbed the money — approximately $600 to $800 of the victim’s insurance proceeds — and ran. Sosely said he believed the police found *124 the bullet that fractured his hip and exited his left buttock.
Sosely said tubes were placed into his chest in the hospital because of his collapsed lungs. One was in for three days, the other for seven and that he was in University Hospital for seven days following his shooting. He had had numerous surgeries. He has a brachial plexus nexus nerve injury in his right arm from being shot, resulting in paralysis and “RSD.” He identified Andrews in court as the person who shot him. He acknowledged that he identified the defendant in the photographic lineup presented to him by Detective Harris.
Sosely confirmed on cross examination, as he had testified on direct examination, that he no longer resided in Louisiana. He admitted that the District Attorney’s Office had purchased an airline ticket for him to come to testify, paid for a hotel room for him to stay in, and paid for food he ate at the hotel restaurant.

ERRORS PATENT

|SA review of the record reveals one patent error. The trial court did not dispose of defendant’s timely-filed motion for post-verdict judgment of acquittal prior to sentencing, as required by La.C.Cr.P. art. 821(A).[1] The trial court did not rule on the motion until after the 14 May 2010 sentencing, denying it on 20 October 2010.
In State v. Anderson, 99-1407 (La.App. 4 Cir. 1/26/00), 753 So.2d 321, this court noted as an error patent that the trial court had failed to rule on the defendant’s timely-filed motions for new trial, post-verdict judgment of acquittal, and in arrest of judgment until after sentencing. This court held that the error required that the sentence be vacated and the matter remanded for resentencing. As with the requirement of La.C.Cr.P. art. 821(A) (that a motion for post-verdict judgment of acquittal must be filed and disposed of prior to sentencing), La.C.Cr.P. arts. 853 and 861, respectively, expressly require that a defendant’s motions for new trial and in arrest of judgment be filed and disposed of prior to sentencing. In Anderson we cited, inter alia, State v. Randolph, 409 So.2d 554 (La.1981), a per curiam decision, for the proposition that the sentence had to be vacated and the case remanded for resen-tencing. In Randolph, the trial court minutes did not reflect that the trial court ruled on the defendant’s motion for new trial before imposing sentence. The Court noted that the defendant had alleged no prejudice, but the court stated that, “[n]ev-ertheless, it is preferred, and Art. 853 1 ^requires,” that the tidal court rule on the motion prior to sentencing. Randolph, 409 So.2d at 554. We also cited the prior decision of State v. Smith, 553 So.2d 934 (La.App. 4th Cir.1989), where this court noted as an error patent that the trial court had failed to rule on the defendant’s motion for new trial before imposing sentence, as required by La.C.Cr.P. art. 853. However, we further noted that nothing in the record indicated that the court had ever ruled on the motion, concluding that: “The failure of the trial court to rule on this motion constitutes an error patent on the face of the record.”
Similarly, this court has held in other cases that the failure of a trial court to rule on the merits of a motion for new trial prior to sentencing constitutes an error patent on the face of the record, and requires that the sentence be vacated and the case remanded for resentencing. State v. Melancon, 01-1656, p. 3 (La.App. *125 4 Cir. 8/21/02), 826 So.2d 633, 636; State v. Allen, 99-2358, p. 4 (La.App. 4 Cir. 3/21/01), 788 So.2d 62, 65; State v. Powell, 00-0484, p. 3 (La.App. 4 Cir. 1/24/01), 779 So.2d 67, 70.
All of the above decisions involving a trial court’s failure to rule on a defendant’s respective motions for new trial before sentencing are analogous to the instant case, involving the trial court’s failure to rule on defendant’s motion for post-verdict judgment of acquittal — given that a trial court is required by the Louisiana Code of Criminal Procedure to dispose of both motions prior to sentencing.[2]
In the instant case Andrews has not raised the issue of the trial court’s failure to rule on his motion for post-verdict judgment of acquittal until after sentencing. As a practical matter, we perceive that he has suffered no noticeable prejudice by the trial court’s failure to rule on the motion until after his sentencing. The only purpose that vacating the defendant’s sentence and remanding for resentencing (since the motion for post-verdict judgment verdict of acquittal was denied by the trial court on 20 October 2010) would serve would be to comply with the requirement of La.C.Cr.P. art. 821(A) that the motion be disposed of before sentencing.
[7 In State v. Turner, 08-0265, 999 So.2d 1262, unpub. (La.App. 4 Cir. 1/28/09), the defendant filed a motion for new trial on 18 July 2006. Neither the docket master, minute entries, nor the sentencing transcript reflected that the motion for new trial was disposed of before the defendant’s 14 September 2007 sentencing. On 2 April 2008, after the defendant’s appeal had been lodged with this court, we ordered the trial court to rule on the motion for new trial and forward a minute entry to this court to reflect compliance. On 10 October 2008, a minute entry dated 8 October 2008 was filed with this court, reflecting that it was a corrected minute entry for 14 April 2008. The correction was to the effect that on 14 April 2008 the trial court denied the defendant’s motions in arrest of judgment and for new trial. In noting the patent error that the trial court had failed to dispose of the motion for new trial prior to sentencing, this court distinguished the ease from its prior decisions in which the trial court had never ruled on the motions for new trial after sentencing. In Turner, given that the court had ruled on the motion, albeit after sentencing, and in fact after the record in the defendant’s appeal had been lodged, this court found the patent error was harmless, noting that the Louisiana Fifth Circuit Court of | ^Appeal had reached the same result in State v. Brooks, 00-106 (La.App. 5 Cir. 9/26/00), 769 So.2d 1242.
Turner is an anomaly. Following this court’s precedent in its other decisions involving motions for new trial — although in those other decisions this court vacated the sentences and remanded for rulings on the respective motions for new trial — we find that Andrews’ sentence must be vacated and the case remanded to the district court for resentencing in order to be in compliance with La.C.Cr.P. art. 821(A).

ASSIGNMENT OF ERROR

In his sole counsel assignment of error, Andrews argues that the trial court abused its discretion in denying his challenge for cause of potential juror, Allison Gordin.
*126 Ms. Gordin asked several questions during voir dire. She first asked a question concerning any witness who had been convicted of a crime and was serving time, stating “I would ask the state whether or not they were given a little time off or something for their — The potential juror — who had served on a prior jury that month where the jury had unanimously found the defendant not guilty of theft over $500 — obviously was concerned about the possible personal interest such a witness would have in testifying.
The prosecutor subsequently asked the panel of potential jurors, including Ms. Gordin, whether anyone had questions about the elements of first degree murder. Ms. Gordin stated:
I could listen tot [sic] he [sic] witnesses very carefully as to what they have to say and all of that and any other evidence but in my opinion, if you point a gun at someone and it’s proven that you’re the person that pointed the gun at someone, it better be for self-defense only because otherwise in my | ^opinion, if you point a gun at someone and it goes off whether you intended to pull the trigger or not, you’re guilty of attempted murder.
The prosecutor did not delve into that issue; defense counsel brought it up later:
MR. MALVEAU:
[[Image here]]
Ms. Gordin, the state asked you about the attempted murder and you said it would have to be shown that it was self-defense. Could you explain that a little bit more, your answer to that question about if someone pulls a gun out, you’d have to prove self-defense?
MS. GORDIN:
My feeling is, if you point a gun at someone, it better be for self-defense.
MR. MALVEAU:
Okay. So—
MS. GORDIN;
Because if that gun goes off, it’s either manslaughter or it’s attempted murder or it’s whatever it is if they die or don’t die. I just don’t think you should be pointing guns at people.
MR. MALVEAU:
So, if — basically, you’re saying that if the state presents its case to you and we didn’t show you — now, this is all hypothetical. If we didn’t show you some evidence of a self-defense then you’d have to find the person guilty, automatically?
MS GORDIN:
If the state proved that that person actually pulled the trigger.
MR. MALVEAU:
| mSo, if they showed you that, you’d say we would have to show you something about self-defense?
MS. GORDIN:
Yeah. I do not believe in pointing guns at people.
[[Image here]]
THE COURT:
Challenges for cause.
MS. COLLINS:
None from the state.
MR. MALVEAU:
Only one we have, Judge, would be Ms. Gordin. Basis for the challenge is that she’s kind of nutty but other than that—
THE COURT:
Denied.
MR. MALVEAU:
Other than that, Judge, she said basically we need to show her some evidence of self-defense.
*127 THE COURT:
No, I don’t think she said that. Because you would have to prove self-defense based under the — you would have to allege it and — but she said — I think what she said was not contrary to the instructions that I’ll give her. So, I’m going to deny your challenge for cause.
La.C.Cr.P. art. 797 governs when a prospective juror may be challenged for cause, providing in pertinent part:
The state or the defendant may challenge a juror for cause on the ground that:
[[Image here]]
|n(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence.
[[Image here]]
(4) The juror will not accept the law as given to him by the court;
The Louisiana Supreme Court summarized the applicable law in State v. Juniors, 03-2425, pp. 7-9 (La.6/29/05), 915 So.2d 291, 304-305, as follows:
Louisiana Constitution article I, § 17 guarantees to a defendant the right to full voir dire examination of prospective jurors and to challenge jurors peremptorily. The number of peremptory challenges granted a defendant in a capital case is fixed by law at twelve. LSA-C.Cr.P. art. 799. When a defendant uses all twelve of his peremptory challenges, an erroneous ruling of a trial court on a challenge for cause that re-
suits in depriving him of one of his peremptory challenges constitutes a substantial violation of his constitutional and statutory rights, requiring reversal of the conviction and sentence. See State v. Cross, 93-1189, p. 6 (La.6/30/95), 658 So.2d 683, 686; State v. Bourque, 622 So.2d 198, 225 (La.1993), overruled on other grounds by State v. Comeaux, 93-2729 (La.7/1/97), 699 So.2d 16. Prejudice is presumed when a challenge for cause is erroneously denied by a trial court and a defendant has exhausted his peremptory challenges. State v. Robertson, 92-2660, p. 3 (La.1/14/94), 630 So.2d 1278, 1280; State v. Ross, 623 So.2d 643, 644 (La.1993). Therefore, to establish reversible error warranting reversal of a conviction and sentence, defendant need only demonstrate (1) the erroneous denial of a challenge for cause; and (2) the use of all his peremptory challenges. Cross, 93-1189 at 6, 658 So.2d at 686; Bourque, 622 So.2d at 225.
A trial court is vested with broad discretion in ruling on challenges for cause, and its rulings will be reversed only when a review of the voir dire record as a whole reveals an abuse of discretion. State v. Campbell, 06-0286, p. 73 (La. 21/08),12 983 So.2d 810, 858; State v. Leger, 05-0011, p. 66 (La.7/10/06), 936 So.2d 108, 155. Only where it appears, upon review of the voir dire examination as a whole that the trial court’s exercise of that discretion has been arbitrary or unreasonable, resulting in prejudice to a defendant, will an appellate court reverse that ruling. State v. Lee, 93-2810, p. 9 (La.5/23/94), 637 So.2d 102, 108; State v. Passman, 345 So.2d 874, 880 (La.1977).
In State v. Taylor, 03-1834 (La.5/25/04), 875 So.2d 58, the Court reversed a decision by this court,[3] in which this court had *128 reversed the defendant’s second degree murder conviction on the ground that the trial court wrongfully denied the defendant’s challenge for cause. The potential juror in Taylor had stated during voir dire that “you would have to really prove to me that you could not get away from the situation and that the only way for you to escape death was to kill that person.” Id., p. 5, 875 So.2d at 62. The Court acknowledged that in a homicide prosecution where the defendant claimed self-defense the state has the burden of burden of establishing beyond a reasonable doubt that the defendant did not act in self-defense. However, the court noted, inter alia, that the potential juror’s statement:
[PJlaced in context, was made in response to defense counsel’s hypothetical questions concerning whether the number of gunshots would negate the defendant’s claim of self-defense. Specifically, defense counsel asked [the potential juror] if he drew a distinction based on that hypothetical question.
Id., p. 7, 875 So.2d at 63.
On the issue of hypothetical questions posed to potential jurors, the Court stated in Taylor.
11⅞“[^0⅛ dire does not encompass unlimited inquiry by defendant into all possible prejudices of prospective jurors, including them opinions on evidence, or its weight, hypothetical questions, or questions of law that call for any prejudgment of supposed facts in the case.” [State v.] Ball, [2000-2277 (La.1/25/02), 824 So.2d 1089,] 1110. “Louisiana law clearly establishes that a party interviewing a prospective juror may not ask a question or pose a hypothetical which would demand a commitment or prejudgment from the juror or which would pry into the juror’s opinions about issues to be resolved in the case.” Id. “It is not proper for counsel to interrogate prospective jurors concerning their reaction to evidence which might be received at trial.” State v. Williams, 230 La. 1059, 89 So.2d 898, 905 (1956); see also State v. Smith, 216 La. 1041, 45 So.2d 617 (1950) (“hypothetical questions and questions of law are not permitted in the examination of jurors which call for a pre-judgment of any supposed case on the facts”).
Taylor, 03-1834, p. 7, 875 So.2d at 63.
In the instant case, when questioning Ms. Gordin, defense counsel stated, in pertinent part: “now, this is all hypothetical,” (see supra), concerning the issue of her belief that the defendant would have to prove self-defense if the state proved that defendant shot the victim. Under Taylor, this was impermissible. Although the state did not object to the questioning, considering the result and reasoning of the court in Taylor, Andrews was not entitled to challenge Ms. Gordin for cause based on her response to defense counsel’s hypothetical question.
In addition, we note that no evidence or suggestion of self-defense is made in the case before us. Consequently, the trial court correctly did not instruct the jury on self-defense or the defense of justification. No firearm was recovered on the victim. No firearm was recovered at the scene or in connection with the shooting. The defense presented no evidence, testimonial or otherwise. It was Ms. Gordin who brought up the issue of self-defense, unnecessarily so.
We do not find that the trial court abused its discretion in denying the defendant’s challenge for cause as to Ms. Gor-din.
|14The assignment of error is without merit.

*129
PRO SE ASSIGNMENT OF ERROR

In his first pro se assignment of error, Andrews argues that the record is incomplete because the entire jury voir dire, including the bench -conferences during which peremptory challenges were exercised, was not transcribed.
The defendant correctly notes that La. C.Cr.P. art. 795 B(2) requires that counsel for the state and defense make and communicate their peremptory challenges to the court in a side bar conference. The trial court has a duty to ensure that such side bar/bench conferences involving jury selection are properly recorded. State v. Pinion, 06-2846, p. 9 (La.10/26/07), 968 So.2d 131,135.
In Pinion, cited by defendant in his pro se brief, the Court vacated the defendant’s conviction and sentence for second degree murder, holding that the failure of the court reporter to adequately record bench conferences in which the state and defense made challenges for cause and exercised their peremptory challenges prejudiced the defendant’s appeal. However, in Pinion, notably, the Court reversed the defendant’s conviction and sentence not because the bench conference transcriptions were absent from the record, but because uncertainty existed with respect to how may cause challenges the defense made unsuccessfully, and “the absence of other contemporaneous records accounting for the selection process, e.g., adequate minutes or jury strike sheets.” Id., p. 10, 968 So.2d at 136.
Pinion is distinguishable. First, the trial transcript in the instant case contains the side bar conferences during which challenges for cause were made by defense counsel as to Bruce Jamison, a Louisiana State Trooper, and Ms. Gordin. | [5Both challenges for cause were denied. Andrews does not argue that the trial court erred in denying the challenge for cause as to Trooper Jamison, who assured the court that he could be impartial. We have previously addressed the challenge for cause as to Ms. Gordin. The instant case is further distinguishable from Pinion in that the record before us contains a jury strike sheet, and no uncertainty exists as to how many challenges for cause were made by defense counsel. We find no merit to Andrews’ suggestion that “a reasonable probability exists” that counsel made a challenge for cause as to a City of New Orleans city attorney who defended police officers in civil suits. The jury strike list reflects only two challenges for cause: Trooper Jamison and Ms. Gordin. Further, no uncertainty exists as to how many peremptory challenges defense counsel made, for he used all twelve allotted to the defense, as reflected by the jury strike list, and as represented by defendant in his counsel assignment of error.
In this assignment of error Andrews also argues that a strong possibility exists that other potential members of the jury and/or those who were selected were tainted by Ms. Gordin’s remarks concerning her belief that if you point a gun at someone it had better be for self-defense. We find no evidence that the record of the voir dire is incomplete relative to Ms. Gordin. The record does not reflect that defense counsel asked the trial court to inquire as to whether any potential jurors and/or any who had been selected by that point were affected by Ms. Gordin’s comments. Ms. Gordin’s beliefs were refined by questioning to be that if you point a gun at someone, pull the trigger, and shoot that person, it had better be in self-defense. No suggestion is presented that the jury returned a verdict of guilty as charged of attempted first degree murder because potential juror Ms. Gordin stated her belief that self-defense was the only reason to shoot someone.
*130 hfiWe find no merit to this assignment of error.

PRO SE ASSIGNMENT OF ERROR NO. 2

In his second assignment of error, Andrews appears to question whether he was denied his constitutional right to testify. At the close of the state’s case in chief the defense announced that it rested. The record offers no suggestion that Andrews wished to testify, or was denied his right to testify.
Andrews presents no argument as to this assignment of error. Rather, he cites State v. Dauzart, 99-3471 (La.10/30/00), 769 So.2d 1206, seeming to quote language from the decision and represent it as a “standard.” However, the language is not a quote from DauzaH. Further, DauzaH involved a trial court denying a defendant the right to testify after the defense initially rested. In the case before us, we find no indication that Andrews ever sought to testify at any point, either before or after the defense had rested. Andrews cites nothing in the record that suggests in any way that he was denied his right to testify.
No merit exists as to this assignment of error.

CONCLUSION

For the foregoing reasons, we affirm Andrews’ conviction, vacate his sentence, remand this matter to the trial court for a ruling upon Andrews’ post-verdict judgment of acquittal, and thereafter, if appropriate, resentence Andrews.
CONVICTION AFFIRMED; SENTENCE VACATED; REMANDED.

. La.C.Cr.P. art. 821(A) states:
The defendant may move for a post verdict [sic] judgment of acquittal following the verdict. A motion for post verdict [sic] judgment of acquittal must be made and disposed of before sentence.

. We note that all of the above decisions are distinguishable from the instant case in that they all involved situations where the trial court never ruled on the motion for new trial — either before or after sentencing. In those cases this court vacated each defendant’s respective sentence and remanded the case to the trial courts for rulings on the motion for new trial.

. State v. Taylor, 02-2011 (La.App. 4 Cir. 6/11/03), 850 So.2d 5.