# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 23-554

**STATE OF LOUISIANA**

**VERSUS**

**LEONARD JAMES MILLER**

**\*\*\*\*\*\*\*\*\*\***
APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, No. 22-K-0708-C
HONORABLE ALONZO HARRIS, JUDGE PRO TEMPORE

**\*\*\*\*\*\*\*\*\*\***

## JONATHAN W. PERRY
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Elizabeth A. Pickett, Van H. Kyzar, and Jonathan W. Perry, Judges.

**AFFIRMED.**

**Annette Roach**
**Louisiana Appellate Project**
**P.O. Box 6547**
**Lake Charles, Louisiana 70606**
**(337) 436-3384**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Leonard James Miller**

**Honorable Chad Pitre**
**District Attorney**
**Parish of St. Landry**
**Kathleen E. Ryan**
**Assistant District Attorney**
**Post Office Drawer 1968**
**Opelousas, Louisiana 70571**
**(337) 948-0551**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**PERRY, Judge.**

In this criminal appeal, involving second degree murder and possession of a firearm by a convicted felon, Defendant, Leonard James Miller, asks us to review the charging documents, the sufficiency of the evidence, and an evidentiary matter. For the following reasons, we affirm Defendant's conviction and sentence.

**FACTS AND PROCEDURAL HISTORY**

On April 11, 2022, as an aid to the St. Landry Parish Sheriff's Office, Eunice police officers responded to a dispatch indicating that gunshots had been fired on Bradley Street, a location just outside the Eunice city limits. Officers found the victim, Clarence Mitchell, slumped over the steering wheel of his vehicle, unconscious, and in the driver's seat with a fully loaded revolver in his lap. The victim was transported to Lafayette General Hospital with multiple gunshot wounds. The victim died the following day. An autopsy ruled that the victim died from shotgun wounds, approximately fifteen in number, to the head, face, and body.

The subsequent investigation showed that the victim and Defendant knew each other prior to the homicide. The victim shared a child, C.J., with Samantha Cormier ("Cormier"), Defendant's occasional girlfriend. The victim and Cormier lived in Eunice and shared custody of C.J. The victim did not want Defendant near C.J.

About two weeks prior to the homicide, Cormier moved to 119 Bradley Street and lived there with her two children and Defendant. However, shortly after moving to Bradley Street, Cormier and Defendant ended their relationship when Defendant threw a brick through Cormier's window. It was then that Defendant moved out.

The victim had been a paraplegic since 2017. Nonetheless, he could operate his vehicle, a 1996 white Grand Marquis, by using hand controls to operate the

vehicle's pedals. At the time of the homicide, Defendant drove a white Mercury Mountaineer SUV.

The day before the homicide, Defendant had returned to Bradley Street to finish removing his belongings. When the Defendant arrived, the victim was present. At that time, Defendant and the victim exchanged words. This animosity was not new. Cormier testified that earlier on March 2, 2022, Defendant had pulled a pistol on the victim in the presence of her and the victim's son.

Tammie Cormier, Cormier's mother, testified that she was visiting her mother on Bradley Street on the day of the homicide. Prior to the homicide, she and the victim were talking in his car in front of her mother's residence. While they were speaking, she said that Defendant pulled up next to the victim's automobile, held up a shotgun, and drove away.

After the shooting, forensic evidence taken from the victim's cell phone revealed recent text messages between the victim and Defendant. These messages included numerous threats and showed that the parties may have tried to meet earlier on the day of the homicide. The last text the victim sent to Defendant said, "I'm about to pull up." Shortly thereafter, Defendant responded "cool." Thirteen minutes later the first 911 call was received about the shooting.

Christopher Gobert, a resident on Bradley Street, testified that prior to the shooting he saw an SUV, which may have been white, driving down the street. Shortly afterwards, Gobert heard approximately three gunshots.

Another Bradley Street neighbor, Gloria Lejeune, said that she was in her living room watching television when she heard three loud gunshots that were consistent with the sound of a shotgun. When she went to the open window to investigate, she saw a white car drift off the road into the ditch and then strike the

2

side of a house. She also testified that she saw a man in an orange shirt standing in the shade next to an old trailer house behind some bushes and tree branches; he was holding a big gun in his hand. She further said she saw a white SUV parked on the side of the ditch, near where the man in the orange shirt was standing. At that time, she reported the shooting to the police.

After the shooting, investigators met Cormier who provided them with background information that led her to believe that Defendant shot the victim. On the morning of the shooting, Defendant had a text conversation with Cormier, in which he stated that he was posted outside "[i]n case he [the victim] come back" and "I got something for him." Cormier also told the investigators that on the day of the homicide Defendant went to the Sonic Drive-In, her workplace in Eunice. When the investigators reviewed the surveillance video at Sonic, it showed Defendant driving a white SUV, and he was wearing an orange shirt.

Even though the shooting lacked eyewitnesses, Mark LeBlanc, the detective from the St. Landry Parish Sheriff's Office who processed the crime scene, described his theory of events, based on information gathered in the investigation:

> A. The victim drove down Bradley Street, at the point where he would have had to have made a left turn to continue on Bradley, that would place him in front of the residence of 125 Bradley Street, and based on the physical evidence we saw at the scene, it would indicate to us that somebody was standing in the yard, initially fired at the vehicle as it came straight toward them, fired a second shot through the open right front door window, fired a third and fourth subsequent shot as the vehicle rolled further down Bradley Street, and the vehicle, obviously no long[er] under control at that point, rolled through the ditch into the yard of 119 Bradley Street and came to rest up against the home.
>
> . . . .

3

Yes, [it] would have been in the yard of 125 Bradley Street, possibly at one position for the initial shot and possibly for the second shot, and then having changed positions slightly for the third and fourth shot, but all within the yard of 125 Bradley Street.

On April 13, 2022, Defendant was arrested in Lafayette at the home of Amy Magnon ("Magnon"), another ex-girlfriend of Defendant. After his arrest, Defendant gave two interviews to law enforcement, one on April 13, 2022, and a second one on April 19, 2022. Even though in his first interview with police Defendant was evasive, in a second interview, he blamed the shooting on Cormier. Also, jail officials intercepted a letter by Defendant to Magnon in Lafayette in which he outlined a plan to frame Cormier for the murder. In that same letter, Defendant also asked Magnon to provide him with a false alibi.

On April 26, 2022, a St. Landry Parish grand jury returned a true bill of indictment against Defendant, charging him with second degree murder, a violation of La.R.S. 14:30.1. Defendant pled not guilty to that charge on May 19, 2022. Later, on February 9, 2023, the State filed a bill of information charging Defendant with possession of a firearm by a convicted felon, a violation of La.R.S. 14:95.1. On February 16, 2023, Defendant again faced arraignment on this charge, waived reading of the bill of information, and pled not guilty to the charges against him.

The parties selected a jury on March 15, 2023, and began hearing evidence on March 28. After a three-day trial, the jury unanimously found Defendant guilty as charged for both offenses. On May 9, 2023, the trial court sentenced Defendant to life imprisonment for second degree murder, without benefits, and twenty years at hard labor for possession of a firearm by a convicted felon.[1] The sentences were ordered served concurrently.

---

[1] In the present case, the trial court did not specifically state that Defendant's sentence for possession of a firearm by a convicted felon was to be served without benefits, and the State has

4

Defendant now appeals his convictions, assigning three errors:

1. The trial court erred in allowing the prosecution to proceed to trial on an Indictment that had been superseded by the filing of a subsequent Bill of Information filed under the same docket number.

2. The State failed to prove beyond a reasonable doubt that Leonard Miller's actions were not justifiable, reasonable, and apparently necessary in order to prevent a forcible offense against his person.

3. The trial court erred in denying Leonard Miller the opportunity to present a defense as guaranteed by the Sixth Amendment of the Constitution of the United States when it denied the defense an opportunity to present evidence of Clarence Mitchell's criminal history to support Miller's self-defense claim.

## ERRORS PATENT REVIEW

In accordance with La.Code Crim.P. art. 920, this court reviews all appeals for errors patent on the face of the record. After reviewing the record, we find that there is a patent error concerning Defendant's sentence for possession of a firearm by a convicted felon.

The error patent involves the fine that should have been imposed at sentencing. Louisiana Revised Statutes 14:95.1(B) required the trial court to impose a fine of not less than one thousand dollars nor more than five thousand dollars as part of the sentence for Defendant's conviction of possession of a firearm by a

---

not raised this issue on appeal. However, La.R.S. 15:301.1(A) states:

> When a criminal statute requires that all or a portion of a sentence imposed for a violation of that statute be served without benefit of probation, parole, or suspension of sentence, each sentence which is imposed under the provisions of that statute shall be deemed to contain the provisions relating to the service of that sentence without benefit of probation, parole, or suspension of sentence. The failure of a sentencing court to specifically state that all or a portion of the sentence is to be served without benefit of probation, parole, or suspension of sentence shall not in any way affect the statutory requirement that all or a portion of the sentence be served without benefit of probation, parole, or suspension of sentence.

*In accord, State v. Hardy*, 21-105 (La.App. 3 Cir. 7/13/22), 344 So.3d 821, *writ denied*, 22-1264 (La. 11/16/22), 349 So.3d 1001.

convicted felon. Our review of the record shows that the trial court failed to impose the mandatory fine, rendering the sentence for possession of a firearm by a convicted felon illegally lenient.

In previous opinions, this court has noted that if the trial court imposed an illegally lenient sentence, we would not correct the error unless the State raised the issue. *See, e.g., State v. Charles*, 20-498 (La.App. 3 Cir. 5/5/21), 318 So.3d 356. S*ee also, State v. Brown*, 19-771, p. 2 (La. 10/14/20), 302 So.3d 1109, 1110 (per curiam), where the supreme court stated the following in dicta:

> Furthermore, the State did not complain on appeal that the sentences were illegally lenient. Therefore, the court of appeal erred in finding as an error patent that they were indeterminate and in vacating them, absent any complaint by the State that the district court failed to apply the mandatory firearms enhancement.

Because the State has not raised the issue of Defendant's illegally lenient sentence, we will not correct Defendant's sentence to impose the mandatory fine.

## ASSIGNMENT OF ERROR NO. 1[2]

### Defendant's Argument

Defendant argues that the bill of information filed in February 2023, which charged him with possession of a firearm by a convicted felon, superceded the bill of indictment filed in April 2022, which charged him with second degree murder. He argues this is a structural error that requires this court to vacate both convictions and order a new trial ordered on the possession charge only.

---

[2] Normally we would first address an assignment challenging sufficiency of the trial evidence. However, appellate counsel has relegated the sufficiency argument to the second assignment of error, because she argues under this assignment that both convictions should be vacated and that the murder charge cannot be retried.

6

The State counters with a citation to the minutes of the second arraignment, conducted after the State filed the bill of information. According to the State, the minutes indicate that the parties and the trial court understood that the State was proceeding pursuant to both bills, thus charging Defendant with both second degree murder and possession of a firearm by a convicted felon.

The court minutes for February 16, 2023, state:

> The defendant was previously arraigned in this matter for 2ⁿᵈ Degree Murder on May 19, 2022 and was not arraigned for the separate charge of Felon in Possession of a Firearm in this docket number. The defendant waived formal arraignment and the reading of the bill of information and entered a plea of not guilty to the charges.
>
> A 404B hearing was previously fixed for March 2, 2023 at 1:30 p.m. Jury selection has been fixed in this matter for March 15, 2023 at 9:00 a.m.; jury trial has been fixed for March 28-30, 2023 at 9:00 a.m. Defendant given written notice of said court dates.

**Court then adjourned without date.**

## Law and Analysis

The nature of a criminal proceeding is codified in La.Code Crim.P. art. 381 which provides that "[a] criminal prosecution is brought in the name of the state . . . for the purpose of bringing to punishment one who has violated a criminal law[.]" "In a criminal prosecution, an accused shall be informed of the nature and cause of the accusation against him." La.Const. art. 1, § 13. As provided in La.Code Crim.P. art. 382(A), "[a] prosecution for an offense punishable by . . . life imprisonment, shall be instituted by indictment by a grand jury. Other criminal prosecutions in a district court shall be instituted by indictment or by information." Furthermore, as explained in *State v. Schleve*, 99-3019, p. 12 (La.App. 1 Cir. 12/20/00), 775 So.2d 1187, 1197, *writ denied*, 01-210 (La. 12/14/01), 803 So.2d 983, *cert. denied*, 537

U.S. 854, 123 S.Ct. 211 (2002) and *writ denied*, 01-115 (La. 12/14/01), 804 So.2d 647, the requirement of Article 1, § 13 of the Louisiana Constitution "is intended to protect the accused's right to prepare a defense and exercise fully his right of confrontation." To that end, the purpose of a bill of indictment or information is to provide notice to a defendant regarding the criminal charges he will face. *State v. Gustave*, 22-139 (La.App. 5 Cir. 12/28/22), 355 So.3d 704, *writ denied*, 23-149 (La. 12/19/23) 374 So.3d 977.

In the present case, the record shows that at the conclusion of a hearing on Defendant's motion for a speedy trial on the second degree murder indictment, the trial court also noted that the State had filed a bill of information charging Defendant as a felon in possession of a firearm and that Defendant had not yet been arraigned on that charge. After hearing that, defense counsel waived a formal reading of the bill of information and entered a plea of not guilty to that charge. Afterwards, the trial court asked the State if that charge was being tried on the same date as the second degree murder charge. In response, the State replied, "Yes sir. It's in the same docket number, Your Honor. It's just an additional charge." Our review of that transcript and the court minutes of the second arraignment shows that Defendant and the trial court were aware that the new bill of information simply added an additional charge to the proceedings. Further, as the State points out, both the indictment and the bill of information were read to the jury in court at the opening of the trial proceedings, mentioned in both parties' opening and closing arguments, and included in the jury instructions, all without objection or an opposing motion by Defendant.

Even though we have scoured the jurisprudence for a like case, we have not found a factual scenario exactly on point. Nevertheless, we observe that in *State*

8

*v. Lawson*, 393 So.2d 1260 (La.1981), the State moved to amend the bill and rearraign the defendant after the jury was already sworn. The supreme court held that because the defendant had not objected, the issue was not preserved for review. Similarly, in *State v. Bartie*, 22-401 (La.App. 3 Cir. 3/8/23), 358 So.3d 266, the State failed to rearraign the defendant on the amended bill used in the case. This court ruled the defendant failed to preserve the issue, as he did not object at trial to the State's action. The same is true in the present case—at no time, either at arraignment or at the trial, did Defendant object, urging that the additional charging instrument, namely the bill of information, superceded the earlier-filed bill of indictment. Moreover, the record clearly shows that Defendant had full notice of the charges he faced and further reflects that trial counsel was fully prepared to address both charges and did address both charges during trial. For the reasons discussed, this assignment of error lacks merit.

## ASSIGNMENT OF ERROR NO. 2

### Defendant's Argument

Defendant argues that the State failed to present sufficient evidence to prove that the killing at issue was not justified. Defendant contends the record shows that the victim drove to the crime scene with his front windows rolled down, and he had a revolver in his lap. Defendant further argues that other evidence, particularly text messages the two men exchanged, indicated they were going to engage in some sort of confrontation and that the victim was belligerent. Thus, Defendant asserts he was fearful of the victim, and he argues that he reacted to save his own life when the victim approached in his vehicle.

9

The State maintains that it presented ample evidence to the jury which proved beyond a reasonable doubt that the homicide was not justified.  It points out that Defendant had pulled a gun on the victim one month prior to the murder and stuck it in the victim's face.  Additionally, Defendant also threatened the victim with a shotgun on the morning of the murder.  Beyond that, the jury heard evidence of the threatening texts Defendant sent to the victim, as well as the incriminating texts sent to Cormier prior to the homicide in which he told her that she would not have to worry about the victim anymore and that he was "posted up" on Bradley Street waiting for the victim.

**Law and Analysis**

From the outset, we observe that Defendant only contests the second degree murder conviction.  That statute; La.R.S. 14:30.1, states in pertinent part: "A. Second degree murder is the killing of a human being: (1) When the offender has a specific intent to kill or to inflict great bodily harm[.]"

Louisiana Revised Statutes 14:20(A) governs self-defense in a homicide case and explains in pertinent part, "A homicide is justifiable: (1) When committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger."

The general analysis for insufficiency claims in the criminal setting is well-settled:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct.

10

2781, 61 L.Ed.2d 560, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979), *State ex rel. Graffagnino v. King,* 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See State ex rel. Graffagnino*, 436 So.2d 559 (*citing State v. Richardson*, 425 So.2d 1228 (La.1983)). In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

*State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371.

Specifically, the Louisiana Supreme Court has explained how self-defense is analyzed in an insufficiency of evidence claim, namely:

Under the due process standard of *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.*, 443 U.S. at 319, 99 S.Ct. at 2789. Because defendant claimed that she shot the victim in self-defense (or defense of others), the State also had the burden of proving beyond a reasonable doubt that the homicide was not perpetrated in self-defense. *State v. Taylor*, 02-1834, p. 7 (La. 5/25/04), 875 So.2d 58, 63; *State v. Brown*, 414 So.2d 726, 728 (La. 1982). Thus, when a defendant challenges the sufficiency of the evidence in a self-defense case involving a homicide, the question becomes whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt that the homicide was not committed in self-defense or in the defense of others. *See, e.g., State v. Matthews*, 464 So.2d 298, 299 (La.1985) ("On review, the question therefore is not whether a rational fact-finder could have found that the state had proved the essential elements of the offense beyond a reasonable doubt. The applicable standard is whether a rational fact-finder, after viewing the evidence in the light most favorable to the prosecution, could have found beyond a reasonable doubt that the homicide was not committed in self-defense or in defense of others.").

*State v. Stockstill*, 19-1235, pp. 4–5 (La. 10/20/20), 341 So.3d 502, 505–06.

Although we understand by and large Defendant's factual argument, we find the evidence does not present circumstances that would have caused Defendant to

11

reasonably be fearful of losing his life or receiving great bodily harm. Although the victim's body was found seated in his car with a revolver in his lap, there is nothing in the record to show that the victim even lifted the weapon at the scene, much less aimed it at Defendant or fired it. Also, because the victim was a paraplegic, he had to operate his vehicle entirely with hand controls. And more importantly, even though the victim's weapon was loaded, the evidence disclosed that the victim's weapon had not been fired.

On the other hand, the record showed that as the victim drove down Bradley Street, Defendant, who lay in wait in the bushes from a lot by the street, showered the victim and his vehicle with four shotgun blasts. Granting that the victim was armed, that he and Defendant had agreed via text to meet for some sort of confrontation, and that Defendant may have attempted in the text exchange to de-escalate the situation, the facts presented to the jury, viewed in the light most favorable to the prosecution, bear no characteristic of justifiable self-defense as contemplated in La.R.S. 14:20(A). While the victim's approach may have caused some general subjective fear on Defendant's part, his solution to the situation was to ambush the victim with multiple shotgun blasts. No record evidence demonstrates or even shows that as he fired the shots, Defendant reasonably feared any physical harm from the victim. Again, even the general version of events Defendant presented fails to support a claim of justifiable self-defense.

For the reasons discussed, we find this assignment of error lacks merit.

## ASSIGNMENT OF ERROR NO. 3

### Defendant's Argument

In his final assignment of error, Defendant argues the trial court erred when it denied him an opportunity to present evidence of the victim's criminal history. He

suggests such evidence would have supported his self-defense claim. In support of this assignment of error, Defendant relies on a passage from defense counsel's opening statement. At that time, the following colloquy occurred:

**BY MR. ANTONIO BIROTTE [DEFENSE COUNSEL]:**

Good morning. The Clerk of Court just read to you the charges that Mr. Leonard Miller faces, possession of a firearm by a convicted felon and the second degree murder of Clarence Mitchell. She also read to you my client's plea at that hearing. My client pled not guilty. He is not guilty of this crime.

. . . .

You will hear evidence of Clarence Mitchell being a paraplegic and I agree with that, but you will also learned [sic] that Mr. Mitchell is a paraplegic because –

**MS. RYAN:**

Objection, Judge, may we approach?

**THE COURT:**

Yes.

**WHEREUPON, AN OFF THE RECORD DISCUSSION TAKES PLACE**

**MR. BIROTTE CONTINUES:**

Again, Ladies and Gentlemen, it is my job to make sure you hear everyone. You hear everything, so you can make your own decision as to whether or not Mr. Leonard Miller possessed a handgun. You'll hear information that he did not even own a firearm. Didn't even own one. You'll hear information from witnesses who say they saw a person and this is what we saw, but these people live in the same neighborhood as Mr. Miller. They didn't say it was Mr. Miller. They said this is what we saw.

### State's Position

The State argues that because Defendant's contention is solely based on an unrecorded bench conference, the assignment of error is founded entirely on speculation. Also, the State points out that Defendant neither requested that the

13

bench conference be recorded nor objected on the record that it was not recorded. The State then further asserts that Defendant never sought to introduce evidence of the victim's history. Finally, the State argues that even if Defendant had tried to introduce such evidence, it would have been inadmissible.

## Law and Analysis

In *State v. Pinion*, 06-2346, p. 7 (La. 10/26/07), 968 So.2d 131, 134, the supreme court stated:

> This Court has never articulated a per se rule either requiring the recording of bench conferences or exempting them from the scope of La.C.Cr.P. art. 843, which requires in felony cases the recording not only of the evidentiary portions of trial but also of "the examination of prospective jurors ... and objections, questions, statements, and arguments of counsel." *State v. Hoffman*, 98-3118, p. 50 (La.4/11/00), 768 So.2d 542, 586.

Continuing in *Pinion*, 968 So.2d at 134, the opinion stated, "The Court has instead, conducted a case-specific inquiry to determine whether the failure to record the conferences results in actual prejudice to the defendant's appeal."

It is equally well-accepted that in a criminal case an appellate court has no authority to receive or review evidence not contained in the trial court record. *State v. Oubichon*, 422 So.2d 1140 (La.1982); *State v. Turner*, 626 So.2d 890 (La.App. 3 Cir. 1993), *writ denied*, 93-3182 (La. 4/4/94), 635 So.2d 1122. After reviewing the briefs and the record in the present case, we contacted the district court asking it to supplement the record with a transcription of the bench conference.[3] In response, the district court clerk's office advised us that the conference cannot be transcribed, as the record states, it was "AN OFF THE RECORD DISCUSSION."

In view of the response we received from the district court, it is evident that

---

[3] As Defendant notes, defense counsel and the State approached the bench and a conversation ensued. In her brief, appellate counsel notes that she also filed a motion to supplement the record to obtain a transcription of the bench conference noted in the record.

14

the contentions made by the State and Defendant are based solely upon speculation. As the record provides no facts on which to base any analysis, we have nothing to review.

## DECREE

For the foregoing reasons, we affirm Defendant's convictions and sentences.

**AFFIRMED.**