LMcCLENDON, J.
Defendant, Roy D. Owens, was charged by grand jury indictment with one count of second degree murder, a violation of LSA-R.S. 14:30.1, and pled not guilty. Following a jury trial, he was found guilty as charged. He moved for a new trial and for a post-verdict judgment of acquittal. The motions were denied. Defendant was sentenced to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. He moved for reconsideration of sentence. That motion was denied. He now appeals, designating one assignment of error. We affirm the conviction and sentence.
FACTS
On October 2, 2001, at approximately 4:45 a.m., the children of Latonya Kirsh discovered her dead body on her bed at her home in Slidell. She had suffered six; fractured ribs and her neck showed signs of strangulation. Her scalp had been hemorrhaged by blunt force trauma to the *240 right frontal, right temporal, right parietal, and right occipital areas. Her liver was almost completely transected. The cause of death was blunt force traumatic injuries, resulting in the victim bleeding to death. Fluid taken from the victim’s eye indicated she had ingested cocaine at least one hour prior to her death, but the cocaine did not contribute to her death. At the time of her death, the victim was thirty years old, 5' 1.5" tall, and weighed 120 lbs.
At trial, Dr. Michael Defatta, a forensic pathologist, testified it would have taken several severe blows to fracture the victim’s ribs. In regard to the amount of force required to cause the injury to the victim’s liver, Dr. Defatta testified:
It is going to take an extreme amount of force. I seriously doubt it could be inflicted by a fist. I can’t say that absolutely, but this is more of an injury that you would get from someone being kicked. It is going to take an extreme amount of pressure as well as several blows to be inflicted on the front part of that right upper rib cage as well as the front part of that right upper abdomen. You are basically just compressing that and the rib cage down to split the liver in two. So it’s going to take an extreme amount of force as well as several blows.
| .^Defendant was the victim’s live-in boyfriend. On August 13, 2000, during a fight over food stamps, defendant beat the victim, who was seven months pregnant, and threatened to kill her and the baby she was carrying. The victim reported to police that defendant attempted to choke her in front of her children.
On December 15, 2000, defendant beat and choked the victim during a fight over rent money. When the police arrived at the scene, the victim had a golf-ball-sized bruise on her head and a cut and bleeding lower lip. She identified defendant as her attacker.
During September of 2001, defendant beat the victim with a belt in the street.
On October 1, 2001, the victim and the defendant argued over the defendant’s son remaining in the home. The victim’s daughter[1] last saw the victim alive when the victim left with defendant at approximately 9:45 p.m. At approximately midnight, the victim’s daughter saw the defendant again. He had a “little funny look on his face.” When the victim’s daughter found her mother’s body the next day, the victim was wearing different clothes than the night before.
On October 3, 2001, in response to a newspaper advertisement requesting information on the whereabouts of defendant, the police learned that, on October 2, 2001, a church secretary had given money to defendant to purchase a bus ticket to Shreveport.
On October 4, 2001, the police located defendant hiding under a bed at his brother’s house in Mansfield, Louisiana. While being taken into custody, defendant said to his brother, “[pjromise me you will stay in school because I am spending the rest of my life in jail. You stay strong, you hear me?”
Defendant’s October 4, 2001 audio taped statement concerning the offense was played at trial. Defendant claimed he slammed the victim to the ground after she became high on crack and hit him in the head. He initially claimed not to remember kicking or punching the victim. He later conceded, however, that he slapped the victim “light[J” and that he punched her twice while she was on the Lground. Thereafter, he claimed he kicked the victim in the buttocks and that *241 he punched her at least three times. Defendant claimed he offered to call the victim an ambulance, but that she declined the offer. He claimed to have left Slidell because he was tired of the victim’s drug abuse.
OBJECTION TO JURY INSTRUCTIONS
In his sole assignment of error, defendant contends the trial court committed reversible error because it refused to include in its jury instructions a definition of second degree battery in order to give the jury a complete, rational understanding of the difference between second degree murder and manslaughter.
The court shall charge the jury as to the law applicable to the case. LSA-C.Cr.P. art. 802(1).
It is well settled that the ruling of a trial court on an objection to a portion of its charge to the jury will not be disturbed unless the disputed portion, when considered in connection with the remainder of the charge, is shown to be both erroneous and prejudicial. State v. Rodriguez, 01-2182, p. 24 (La.App. 1 Cir. 6/21/02), 822 So.2d 121, 138, writ denied, 02-2049 (La.2/14/03), 836 So.2d 131.
Louisiana Revised Statutes 14:31, in pertinent part, provides:
A. Manslaughter is:
[[Image here]]
(2) A homicide committed, without any intent to cause death or great bodily harm.
(a) When the offender is engaged in the perpetration or attempted perpetration of any felony not enumerated in Article 30 or 30.1, or of any intentional misdemeanor directly affecting the person; or ....
Louisiana Revised Statutes 14:33, in pertinent part, provides:
Battery is the intentional use of force or violence upon the person of another;
[[Image here]]
Louisiana Revised Statutes 14:34.1, in pertinent part, provides:
| sSecond degree battery is a battery •committed without the consent of the victim when the offender intentionally inflicts serious bodily injury.
For purposes of this article, serious bodily injury means bodily injury which involves unconsciousness, extreme physical pain or protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty, or a substantial risk of death.
During the trial court’s instructions to the jury, the State objected to the court charging the jury on second degree battery as a felony not enumerated under LSA-R.S. 14:30 or LSA-R.S. 14:30.1 as part of its charge on manslaughter under LSA-R.S. 14:31 A(2)(a). The court ruled:
The Court finds that the element of specific intent as contained in the definition of second degree battery is at odds with the element of, quote, without any intent, close quote, as contained in the relevant definition of manslaughter and, therefore, to include second degree battery as a basis for the now felony murder provision of manslaughter would be to introduce the elements of specific intent to the definition of manslaughter under that article.
Further, it is the opinion of the Court that where a victim of a second degree battery is killed as a result of that battery, that constitutes second degree murder as defined in Revised Statute 14:30.1. Therefore, the two offenses being inconsistent as to the criminal intent required of each, the Court declines to *242 instruct the jury on the definition of a second degree battery as a basis for its deliberation on a responsive verdict of manslaughter.
The defense objected to the court’s ruling.
The trial court properly charged the jury as to the law applicable to this case. The facts , of this case did not support a jury charge on second degree battery as a felony not enumerated under LSA-R.S. 14:30 or LSA-R.S. 14:30.1 as part of the charge on manslaughter under LSA-R.S. 14:31 A(2)(a).
Further, defendant suffered no prejudice from the court’s refusal to charge the jury as requested by the defense because the defense did not deny that defendant inflicted the vicious beating, which killed the victim. Thus, the defense conceded that defendant intentionally inflicted serious bodily injury upon the victim. In this case, that serious bodily injury was also great bodily harm. See State v. Corley, 97-235, p. 9 (La.App. 3 Cir. 10/8/97), 703 So.2d 653, 661, writ denied, 97-2845 (La.3/13/98), 712 So.2d 875 (“[t]he fact that the victim’s |fiinjuries could be considered serious bodily injury does not prevent them from being considered great bodily harm.”)
This assignment of error is without merit.
CONVICTION AND SENTENCE AFFIRMED.

. At the time of her June 24, 2003 testimony, the victim’s daughter was fifteen years of age.