STATE OF LOUISIANA
v.
CANDACE HINOJOSA.
No. 2007 KA 0586.
Court of Appeals of Louisiana, First Circuit.
November 2, 2007.
NOT DESIGNATED FOR PUBLICATION.
Doug Moreau, District Attorney, Counsel for Appellant.
Dylan C. Alge, Brandon Brown, Candace Hinojosa, Counsel for Defendant/Appellee.
Before WHIPPLE, GUIDRY, and HUGHES, JJ.
GUIDRY, J.
The defendant, Candace Hinojosa a/k/a Candace Heinzen, was charged by bill of information with one count of third offense operating a vehicle while intoxicated (DWI), a violation of La. R.S. 14:98(D), and pled not guilty.[1] Following a jury trial, she was found guilty as charged She was sentenced to a $2000.00 fine, three years without hard labor, with all but the first forty-five days of the sentence suspended and with the first thirty days without benefit of parole probation or suspension of sentence and otherwise in compliance with La. R.S. 14:98(D). She now appeals, designating six assignments of error. We affirm the conviction and sentence.

ASSIGNMENTS OF ERROR
1. The trial court erred when it denied the defendant's motion to quash.
2. The trial court erred when it denied the defendant's motion to suppress.
3. The trial court erred in denying the defendant's challenge for cause of juror Deanna Jones.
4. The trial comi erred in striking potential juror Mary Burkett for cause.
5. The trial court erred in allowing the prosecution to question the defendant regarding the details of her previous misdemeanor arrests for driving while intoxicated.
6. The trial court erred in charging the jury that the credibility of the defendant s testimony could be impeached because of her previous convictions for driving while intoxicated.

FACTS
On September 15, 2005, at approximately 11:30 p.m., while westbound on Coursey Boulevard Baton Rouge City Police Lieutenant Shawn B. Baxley observed a vehicle being driven by the defendant According to Lieutenant Baxley the vehicle drove on top of the left side line i.e., the line between the left lane and the median at least twice within a distance of approximately one block and one and one half blocks. Lieutenant Baxley also indicated he observed that the defendant was driving 55 miles per hour in a 40 miles-per-hour posted-speed zone. Lieutenant Baxley activated his bar lights and the defendant pulled into a gas station. As the defendant exited her vehicle Lieutenant Baxley noticed she had a slightly unsure balance. While reading the defendant her Mirandi[2] rights, Lieutenant Baxley also noticed that the defendant's eyes were red and glassy, her speech was slurred, and her breath had the odor of an alcoholic beverage. The defendant refused to take any DWI tests.
The defendant testified at trial. She denied operating a vehicle while intoxicated, denied touching the left white line, and denied speeding on the night in question.

MOTION TO QUASH
In assignment of error number one the defendant argues the record on appeal is devoid of any transcript or minute entry regarding her guilty plea in predicate number two and an appellate court may not consider exhibits filed in the record which were not filed in evidence unless authorized by law to do so.
In order for a guilty plea to be used as a basis for actual imprisonment enhancement of actual imprisonment or conversion of a subsequent misdemeanor into a felony the trial judge must inform the defendant that by pleading guilty he waives: (a) his privilege against compulsory self incrimination (b) his right to trial and jury trial where applicable and (c) his right to confront his accuser. The judge must also ascertain that the accused understands what the plea connotes and its consequences.
If the defendant denies the allegations of the bill of information the State has the initial burden to prove the existence of the prior guilty plea and that the defendant was represented by counsel when it was taken. If the State meets this burden the defendant has the burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea If the defendant is able to do this, then the burden of proving the constitutionality of the plea shifts to the State. To meet this requirement, the State may rely on a contemporaneous record of the guilty plea proceeding, i.e., either the transcript of the plea or the minute entry.
Everything that appears in the entire record concerning the predicate as well as the trial judge s opportunity to observe the defendant's appearance, demeanor and responses in court should be considered in determining whether or not a knowing and intelligent waiver of rights occurred. Boykin only requires that a defendant be informed of the three rights enumerated above The jurisprudence has been unwilling to extend the scope of Boykin to include advising the defendant of any other rights which he may have State v Henry, 2000-2250, pp. 8-9 (La. App. 1st Cir 5/11/01), 788 So 2d 535, 541 writ denied, 2001-2299 (La. 6/21/02), 818 So.2d 791.
Prior to trial the defense moved to quash the bill of information charging the instant offense arguing that the minute entry relied upon by the State to establish proof of predicate number one made reference to "charges against him[,]" and the minute entry relied upon by the State to establish proof of predicate number two repeatedly used the pronouns "he" and "his." The defense argued canned minute entries were insufficient to demonstrate a knowing and intelligent waiver of the defendant's rights.
The first hearing on the motion to quash was held on June 20 2006 The State introduced State Exhibit S-1, in globo, into evidence without defense objection State Exhibit S-1, in globo, consisted of a bill of information for predicate number two charging the defendant with driving a vehicle while intoxicated second offense, and a minute entry for predicate number two indicating the defendant represented by counsel withdrew "his" former plea, waived "his" right against self incrimination "his" right to trial and "his" right to confront and cross-examine "his" accusers and the witnesses against "him," and pled guilty as charged. Thereafter, the State requested and was granted, a continuance to August 3, 2006.
On August 3 2006 the State introduced State Exhibit S-2, in globo, into evidence without defense objection State Exhibit S-2, in globo, consisted of a bill of information for predicate number one charging the defendant with driving a vehicle while intoxicated and a minute entry for predicate number one indicating the defendant represented by counsel pled guilty as charged The minute entry indicated the court explained to the accused the nature of and elements required to constitute the crime charged against "him." The minute entry also indicated, however that in response to examination by the court the accused stated that "she" waived her right against self incrimination "her" right to trial "her" right to confront and cross examine her accusers and the witnesses against "him," "her" right to compulsory process and "her" right to appeal
The defense argued the minutes for the predicate offenses indicted a male had been Boykinized, and thus the State had to make some other showing that the defendant had been properly Boykinized. The State argued the minutes for the predicate offenses indicated the defendant was represented by counsel at both of the predicate guilty pleas that she was advised of her rights and understood those rights and that the judges taking the pleas had ruled that the pleas were knowing and intelligent The State argued the burden had shifted to the defense and the defense had presented no evidence to shift the burden back to the State. The court denied the motion to quash finding that throughout history the masculine pronoun had been used to refer to both males and females and use of masculine pronouns in the minutes at issue failed to constitute a significant procedural irregularity sufficient to shift the burden back to the State.
Initially, we note the instant defense argument is not supported by the record which contains a bill of information, and minute entry concerning predicate number two Further if the defense is attempting to challenge the introduction of the evidence concerning the predicate offenses at two different hearings that argument was not preserved for appeal An irregularity or error cannot be availed of after verdict unless at the time the ruling or order of the court was made or sought the party made known to the court the action which he desired the court to take or of his objections to the action of the court and the grounds therefor. La. C.Cr.P. art. 841; La. C.E. art. 103(A)(1). Moreover, the trial court correctly denied the motion to quash.
This assignment of error is without merit.

MOTION TO SUPPRESS
In assignment of error number two the defendant argues Officer Baxley did not have reasonable suspicion to stop her on September 15 2005. She argues that an unsubstantiated observation of the defendant driving on top of the left white line twice is not a reasonable basis for a traffic stop nor is it a violation of La. R.S. 32:79. She also argues that the trial court should have rejected Officer Baxley's testimony concerning pacing due to insufficient foundation and evidence for the "expert" testimony.
A three tiered analysis governs the Fourth Amendment's application to interactions between citizens and police. At the first tier, mere communications between officers and citizens implicate no Fourth Amendment concerns where there is no coercion or detention. State v Caples, 2005 2517 p. 10 (La. App. 1st Cir. 6/9/06), 938 So.2d 147, 154, writ denied, 2006-2466 (La. 4/27/07), 955 So.2d 684.
At the second tier the investigatory stop recognized by the United States Supreme Court in Terry v Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the police officer may briefly seize a person if the officer has an objectively reasonable suspicion supported by specific and articulable facts, that the person is or is about to be engaged in criminal conduct or is wanted for past criminal acts Louisiana Code of Criminal Procedure article 215.1(A) provides that an officer s reasonable suspicion of crime allows a limited investigation of a person However reasonable suspicion is insufficient to justify custodial interrogation even though the interrogation is investigative Caples, 2005-2517 at pp 10-11, 938 So.2d at 154.
Lastly at the third tier a custodial "arrest," the officer must have "probable cause" to believe that the person has committed a crime. Louisiana Code of Criminal Procedure article 213(3) uses the phrase reasonable cause."[3] The "probable cause" or "reasonable cause" needed to make a full custodial arrest requires more than the "reasonable suspicion" needed for a brief investigatory stop. Caples, 2005-2517 at p. 11 938 So.2d at 154.
The Louisiana Supreme Court has recognized that in regard to brief investigatory stops, the level of suspicion required to justify the stop need only rise to the level of some minimal level of objective justification. In determining whether sufficient suspicion existed for the stop a reviewing court must consider the totality of the circumstances giving deference to the inferences and deductions of a trained police officer that might well elude an untrained person, while also weighing the circumstances known to the police not in terms of library analysis by scholars but as understood by those versed in the field of law enforcement. Caples, 2005-2517 at p. 11, 938 So.2d at 154-55.
As a general matter the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred. The standard is a purely objective one that does not take into account the subjective beliefs or expectations of the detaining officer. Although they may serve, and may often appear intended to serve as the prelude to the investigation of much more serious offenses even relatively minor traffic violations provide an objective basis for lawfully detaining the vehicle and its occupants State v Waters, XXXX-XXXX, p. 4 (La. 3/12/01), 780 So.2d 1053, 1056 (per curiam).
Prior to trial the defense moved to suppress illegally seized evidence because the arresting officer s observations that the defendant crossed the left solid line twice and that he paced her speed as 55 in a 40 mph zone failed to create reasonable cause that the defendant had been was or was about to be engaged in criminal behavior. The defense also moved in limine to exclude any testimony from the arresting officer concerning speed measurements of the defendant's vehicle using pacing because that testimony was without scientific merit and the officer lacked the skill knowledge experience expertise and training to carry out any such measurements with accuracy.
Baton Rouge City Police Lieutenant Shawn B. Baxley, a twenty-five-year veteran of the police department, testified at the hearing on the motion to suppress[4] and before the jury at trial.[5] On September 15, 2005, at approximately 11:30 p.m., while westbound on Coursey Boulevard he observed a vehicle being driven by the defendant. The vehicle drove on top of the left side line at least twice within a distance of approximately one block and one and one half blocks. Lieutenant Baxley also observed that the defendant was driving 55 miles-per-hour in a 40 miles-per-hour posted-speed zone. Lieutenant Baxley activated his bar lights and the defendant pulled into a gas station As the defendant exited her vehicle Lieutenant Baxley noticed she had a slightly unsure balance. While reading the defendant her Miranda rights Lieutenant Baxley also noticed that the defendant's eyes were red and glassy her speech was slurred and her breath had the odor of an alcoholic beverage. The defendant refused to take any DWI tests. Based upon his experience and observation, Lieutenant Baxley believed the defendant was under the influence of alcoholic beverages.
Lieutenant Baxley indicated he used pacing i.e., determining a vehicle's speed by following it at a constant distance while observing his own speedometer, to determine the defendant s speed He indicated he checked the speedometer of his vehicle once a month with radar for accuracy. He also indicated he had not received any official pacing training.
The trial comi denied the motion to suppress The court noted Lieutenant Baxley observed the defendant's vehicle twice drift onto the top of the line on the road and determined she was speeding. The court also noted that pacing was "not any magic type thing[,]" but rather "basic math[,]" and that Lieutenant Baxley had reasonable grounds to believe that his speedometer was reliable because he had a certified officer trained in radar test the speedometer for accuracy at least once a month.
The trial court correctly denied the motion to suppress. The traffic stop of the defendant's vehicle and her temporary detention were supported by probable cause based upon Lieutenant Baxley's personal observation, to believe the defendant had committed multiple traffic violations, i.e., violations of La. R.S. 32:61 (maximum speed limit) and La R.S. 32:79(1) (proper lane usage). See Whren v United States, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). Louisiana Revised Statute 32 79(1) is violated when a vehicle makes contact with a fog line. See Waters, XXXX-XXXX at p. 5, 780 So.2d at 1056 57. Further, the trial court correctly determined that Lieutenant Baxley s testimony concerning pacing was not "expert" testimony.
This assignment of error is without merit

CHALLENGES FOR CAUSE
In assignment of error number three, the defendant argues the trial court erred in denying the defense challenge for cause against prospective juror Deanna Jones because she revealed herself as a supporter of Mothers Against Drunk Driving (MADD). In assignment of error number four the defendant argues the trial court abused its discretion in striking prospective juror Mary Burkett for cause. The defendant argues Burkett indicated she would judge the credibility of police officer testimony individually and not prejudge that testimony merely because it came from a police officer.
In order for a defendant to prove reversible error warranting reversal of both his conviction and sentence he need only show the following: (1) erroneous denial of a challenge for cause and (2) use of all his peremptory challenges. Prejudice is presumed when a defendant's challenge for cause is erroneously denied and the defendant exhausts all his peremptory challenges.[6] An erroneous ruling depriving an accused of a peremptory challenge violates his substantial rights and constitutes reversible error. State v Taylor, XXXX-XXXX, pp. 5-6 (La. 5/25/04), 875 So.2d 58, 62.
A trial judge's refusal to excuse a prospective juror for cause is not an abuse of his discretion, notwithstanding that the juror has voiced an opinion seemingly prejudicial to the defense when subsequently on further inquiry or instruction he has demonstrated a willingness and ability to decide the case impartially according to the law and the evidence Taylor, XXXX-XXXX at 6, 875 So.2d at 63. A challenge for cause should be granted even when a prospective juror declares his ability to remain impartial if the prospective juror s responses as a whole reveal facts from which bias prejudice or inability to render judgment according to the law reasonably may be inferred However the trial court is vested with broad discretion in luling on a challenge for cause its ruling will not be disturbed on appeal absent a showing of an abuse of discretion. State v. Henderson, 99-1945, p. 9 (La. App. 1st Cir. 6/23/00), 762 So.2d 747, 754, writ denied, 2000-2223 (La. 6/15/01), 793 So.2d 1235. The State or the defendant may challenge a juror for cause on the ground that the juror is not impartial whatever the cause of his partiality or on the ground that the juror will not accept the law as given to him by the court. La. C.Cr. P. art. 797(2) and 797(4).
During voir dire, prospective juror Jones indicated she had sent donations to MADD. She indicated she had children and could not imagine anything more horrific than losing a child to a drunk driver. She also indicated, "the streets are just bombarded with people who aren't (sic) using alcohol."
After the defense moved to strike Jones for cause the trial court questioned Jones. Jones indicated the fact that she had given money to MADD would not in any way cause her to lean towards the State in deciding the case or in any way affect her deciding the case She also indicated if the State failed to prove the defendant's guilt beyond a reasonable doubt she could vote not guilty.
The trial court denied the challenge for cause against Jones and the defense exercised a peremptory challenge against her before exhausting all six of its peremptory challenges The trial court noted voir dire did not show that Jones could not accept the law or that she could not apply the law to the facts of the case and be a fair and impartial juror.
The trial court did not abuse its broad discretion in denying the challenge for cause against Jones Jones demonstrated a willingness and ability to decide the case impartially according to the law and the evidence and her responses as a whole did not reveal facts from which bias prejudice, or inability to render judgment according to the law could reasonably be inferred.
Also during voir dire prospective juror Burkett indicated she had driven even though she felt that she might have had a little too much to drink. She indicated she would feel kind of weird sitting on a jury and trying to decide the guilt or innocence of conduct similar to her own. She claimed she could set aside her feelings, however, and vote guilty if the State proved its case beyond a reasonable doubt.
Thereafter Burkett indicated she might not be willing to accept a police officer's testimony without video support. She stated she had a lot of friends who had been pulled over by police officers and police officers were very dishonest. She indicated she was not fond of any police officers.
In response to questioning by the court Burkett indicated she was biased against the State because of the past experience of her friends and, based on the experience of her friends she did not believe police officers were honest.
In response to questioning by defense counsel Burkett indicated if she had never met the police officers involved in the case she would openly listen to what they had to say and would judge their credibility regardless of their profession.
In response to questioning by the trial court concerning her conflicting statements, Burkett indicated she did indeed have a bias against police officers and that her bias would affect her in deciding the case.
When offered the opportunity to further question Burkett, defense counsel stated, "I think I'm not going to belabor the point anymore. Thank you for being here today."
The State subsequently challenged Burkett for cause and the trial court granted the challenge. The court noted in speaking to Burkett, it had been convinced she had a strong bias against police officers was not impartial and would not accept the law with reference to judging the credibility of witnesses.
The trial court did not abuse its broad discretion in granting the challenge for cause against Burkett. Burkett's responses as a whole revealed facts from which bias, prejudice, or inability to render judgment according to the law could reasonably be inferred.
In any event, even if the trial court s ruling on the challenge for cause against Burkett was erroneous, any such error was not reversible The erroneous allowance to the State of a challenge for cause does not afford the defendant a ground for complaint unless the effect of such ruling is the exercise by the State of more peremptory challenges than the number to which it is entitled by law. La. C.Cr.P. art. 800(B); State v Thomas, 589 So.2d 555, 566 (La. App. 1st Cir. 1991).
The State exercised only five of the six peremptory challenges available to it in this case See La. C.Cr.P. art. 799.
These assignments of error are without merit.

IMPROPER CROSS-EXAMINATION
In assignment of error number five the defendant argues the State impermissibly inquired into the details of her prior arrests for DWI.
Initially we note the defendant cites the controlling law as La R.S. 15:495. That statute however was repealed effective January 1 1989 See Acts 1988, No 515, § 8.
Louisiana Code of Evidence article 609.1, in pertinent part, provides:
A. General criminal rule. In a criminal case, every witness by testifying subjects himself to examination relative to his criminal convictions subject to limitations set forth below.
B. Convictions. Generally only offenses for which the witness has been convicted are admissible upon the issue of his credibility and no inquiry is permitted into matters for which there has only been an arrest, the issuance of an arrest warrant, an indictment, a prosecution, or an acquittal.
C. Details of convictions. Ordinarily, only the fact of a conviction, the name of the offense the date thereof and the sentence imposed is admissible However details of the offense may become admissible to show the true nature of the offense:
. . .
(3) When the probative value thereof outweighs the danger of unfair prejudice confusion of the issues or misleading the jury.
Article 609.1(C)(3) allows cross-examination into the details of a prior conviction only where the issue of the witness s credibility is raised and the details of the prior conviction are probative in impeaching his testimony and not outweighed by the danger of unfair prejudice confusion of the issues, or misleading the jury. State v Powell, 28,788, p. 8 (La. App. 2d Cir. 11/1/96), 683 So.2d 1281, 1286, writ denied, 97-0092 (La. 5/30/97), 694 So.2d 243.
In connection with defense cross examination Baton Rouge City Police Captain Ernie Brewer indicated that after the defendant refused to take a breath test on the night in question she stated she was taking Nyquil and Claritin.
Thereafter the defendant testified that on September 15 2005 she had not been driving while under the influence of alcoholic beverages but had taken a dose of Nyquil, which contained alcohol.
On cross-examination, the State asked the defendant if she had been given a field-sobriety test in connection with predicates numbers one and two. The defense objected claiming the details of the arrests were irrelevant. The State responded that whether or not the defendant had taken sobriety tests on prior occasions which led to convictions was relevant as to whether she decided not to take sobriety tests in the instant case to avoid conviction. The court overruled the objection and the defendant indicated she had taken a breath test in connection with predicate number one but not in connection with predicate number two. The defendant also indicated she had refused to take a breath test in connection with the instant offense because she had taken Nyquil.
The trial court correctly ovenuled the defense objection The defendant's credibility was at issue in connection with her testimony indicating she had refused the breath test in the instant case not because she was intoxicated, but because she had taken Nyquil. The probative value of whether or not the defendant had refused to take breath tests in connection with predicates numbers one and two to impeach the defendant s explanation for refusing to take a breath test in the instant case was not outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury.
This assignment of error is without merit.

PREJUDICIAL JURY INSTRUCTION
In assignment of error number six the defendant argues it was entirely prejudicial to charge the jury that the credibility of the defendant's testimony could be impeached because of her previous convictions for driving while intoxicated.
It is well settled that the ruling of a trial court on an objection to a portion of its charge to the jury will not be disturbed unless the disputed portion, when considered in connection with the remainder of the charge, is shown to be both erroneous and prejudicial. State v Owens, 2003-2838, p. 4 (La. App. 1st Cir. 9/17/04), 888 So.2d 239, 241, writ denied, 2004-2807 (La. 3/11/05), 896 So.2d 64.
Following an unrecorded in chambers jury charge conference defense counsel objected to the charge on prior convictions and impeachment through these prior convictions[.]" The court overruled the objection noting that the defendant had testified and that the evidence code provided that any prior conviction may be used for impeachment purposes.
The court's charge to the jury was not included in the trial proceedings, which the defense designated to be included in the record. The defense failed to request that the record be supplemented with the jury charge. Thus the jury charge is not in the record before this court and cannot be reviewed.
Moreover, there would be no error in giving the challenged jury charge. The court shall charge the jury as to the law applicable to the case. La. C.Cr.P. art. 802(1). Offenses for which the witness has been convicted are admissible upon the issue of her credibility. La C.E. art. 609.1(B).
This assignment of error is without merit.
CONVICTION AND SENTENCE AFFIRMED.
HUGHES, J., dissenting.
I respectfully dissent Pretending to Ignore the fact that a Juror donated money to MADD and could imagine nothing more "horrific" than her children falling victim to a drunk driver does not serve the ends of justice. Likewise, the rationale for admitting the prior refusal to take a breath test as probative is unpersuasive Railroading the guilty is short sighted.
NOTES
[1] Predicate number one was set forth as the defendant's ApIiI 11, 1997 conviction, under Nineteenth Judicial DistIict Court Docket #XX-XX-XXX, for DWI on October 10, 1996. Predicate number two was set forth as the defendant's August 9, 2001 conviction under Nineteenth Judicial DistIict Court Docket #XX-XX-XXX, for DWI on April 12, 2001.
[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602 16 L.Ed.2d 694 (1966).
[3] The "reasonable cause" standard of Article 213(3) is equivalent to "probable cause" under the general federal constitutional standard To read Article 213 as allowing an arrest on less than probable cause would put the article afoul of the Fourth Amendment. Caples, 2005 2517 at p. 11 n. 3, 938 So.2d at 154 n. 3.
[4] Following the denial of the motion to suppress the defense withdrew the motion in limine, indicating the motion in limine raised the same issue as the motion to suppress and had been filed out of an abundance of caution.
[5] In determining whether the ruling on the defendant s motion to suppress was correct we are not limited to the evidence adduced at the hearing on the motion. We may also consider all pertinent evidence given at the trial of the case. State v. Chopin, 372 So.2d 1222, 1223 n 2 (La. 1979).
[6] The rule is now different at the federal level. See United States v. Martinez-Salazar, 528 U.S. 304, 120 S.Ct. 774, 145 L.Ed.2d 792 (2000) (exhaustion of peremptory challenges does not trigger automatic presumption of prejudice arising from trial court's erroneous denial of a cause challenge).