NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

13-1060

STATE OF LOUISIANA

VERSUS

GERALD BRENT DEBARGE

**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 27274-12
HONORABLE G. MICHAEL CANADAY, DISTRICT JUDGE

**********

JOHN D. SAUNDERS
JUDGE

**********

Court composed of John D. Saunders, Jimmie C. Peters, and Billy Howard Ezell, Judges.

CONVICTION AND SENTENCE VACATED; RESPONSIVE VERDICT ENTERED; REMANDED FOR SENTENCING ON RESPONSIVE VERDICT AND WITH INSTRUCTIONS.

**John Foster DeRosier**
**14th JDC District Attorney**
**Karen C. McLellan**
**14th JDC, ADA**
**P. O. Box 3206**
**Lake Charles, LA 70602-3206**
**(337) 437-3400**
**COUNSEL FOR APPELLEE:**
**State of Louisiana**

**Edward John Marquet**
**Louisiana Appellante Project**
**Post Office Box 53733**
**Lafayette, LA 70505-3733**
**(337) 237-6841**
**COUNSEL FOR DEFENDANT/APPELLANT:**
**Gerald Brent Debarge**

**Gerald Brent Debarge**
**Hunt Correctional Center**
**P.O. Box 174**
**St. Gabriel, LA 70776**
**COUNSEL FOR DEFENDANT/APPELLANT:**
**Gerald Brent Debarge**

**SAUNDERS, Judge.**

On September 12, 2012, the State charged Defendant, Gerald Brent Debarge, with injuring or killing a police animal and resisting an officer, violations of La.R.S. 14:102.8 and La.R.S. 14:108, respectively. Jury selection took place on January 22, 2013, for the trial regarding La.R.S. 14:102.8, as it is a felony. The jury began hearing evidence on January 23. The next day, the jury returned a guilty verdict. After discharging the jury, the court found Defendant guilty of the misdemeanor charge, resisting an officer.

On February 1, 2013, the court sentenced Defendant to three years at hard labor for injuring a police animal and to a concurrent six-month term for resisting an officer.

Defendant now seeks review by this court. Through counsel, he assigns a single error. Through *pro se* brief, he assigns four errors and he also has filed a *pro se* motion.

## FACTS:

On August 14, 2012, Lake Charles police officers gathered at Defendant's apartment to arrest him pursuant to a warrant. He did not answer the door and police heard the sound that indicated he was closing a dead bolt lock. Looking in through the apartment windows, an officer observed the bedroom door closing. Surmising that Defendant was not cooperating, an officer on the scene contacted a K-9 unit. Once at the apartment, the K-9 officer sent the police dog, Barry, in through the window. Barry engaged Defendant and bit him on the left forearm. Defendant responded by punching the dog in the head multiple times with his free hand. Thereafter, Barry released Defendant and took a guard position. Meanwhile, the human officers advanced into the apartment. In response to police commands, Defendant went to his knees and the officers handcuffed him.

**ERRORS PATENT:**

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed by this court for errors patent on the face of the record. First, we find there was a misjoinder of offenses in the indictment.

Louisiana Code of Criminal Procedure Article 493 provides for the joinder of offenses in a single bill of information under limited circumstances if the offenses joined are triable by the same mode of trial. In the present case, count one, injuring or killing a police animal, which is punishable with or without hard labor, is triable by a six person jury, all of whom must concur to render a verdict. La.R.S. 14:102.8; La.Code Crim.P. art. 782. Count two, resisting an officer, is a misdemeanor triable by a judge only. La.R.S. 14:108; La.Code Crim.P. art. 779. Therefore, pursuant to La.Code Crim.P. art. 493, counts one and two were improperly joined in the bill of information.

Defendant did not file a motion to quash the bill of information on the basis of misjoinder of offenses as required by statute. La.Code Crim.P. art. 495. However, court minutes from January 23, 2013, indicate Defendant, appearing *pro se* with the assistance of counsel, orally requested severance of the misdemeanor charge. The court opted to simultaneously conduct a bench trial on the misdemeanor charge while the jury considered the felony charge. The court instructed the prosecutor to present her case, but she was not to argue the charge of resisting an officer to the jury. The parties were instructed that at the end of trial they would be asked if either of them wished to supplement the record before the court ruled on the misdemeanor. The judge explained that he saw no reason to have the same officers come in and offer the same testimony when it would be preserved under oath at the trial of the felony. The State's position was that Defendant had previously agreed to have all the matters tried together, but the

2

court said Defendant had not, as evidenced by his objection that morning. The State objected to the court's ruling.[1]

In *State v. Crochet*, 05-123, pp. 5-6 (La. 6/23/06), 931 So.2d 1083, 1086, the supreme court noted:[2]

> However, for purposes of appellate review, whether the claim involves misjoinder of offenses, prejudicial joinder, or improper consolidation, the defendant must show prejudice to establish that trial of two or more crimes in a single proceeding "affect[ed] his substantial rights." La.C.Cr.P. art. 920; *see State v. Strickland*, 94-0025, p. 13 (La. 11/1/96), 683 So.2d 218, 226 (although prior jurisprudence of the Court distinguished between misjoinder and prejudicial joinder to determine whether defendant's proper remedy at the trial court level was a motion to quash or motion to sever, at the appellate level "the distinction becomes blurred since the basis for the prohibition against both misjoinder and prejudicial joinder is, essentially, prejudice to the defendant. . . . Thus, errors of both types may be reviewed to determine whether the substantial rights of the defendant were prejudiced.") (citing *State v. Mallett, 357 So.2d 1105, 1109 (La.1978))* ("The prohibition against misjoinder of offenses and improper consolidation of offenses for trial is grounded on the possible prejudice arising from a single trial on two or more offenses.").

In this case, Defendant neither alleges nor proves prejudice resulted from the misjoinder of offenses in his case. Accordingly, we find that the error is harmless.

A second error patent is that there is a procedural issue regarding the mode of review for the misdemeanor. Because the misdemeanor charge is not triable by jury, the proper mode of appellate review for that offense is an application for writ of review, rather than an appeal. La.Code Crim.P. art. 912.1.

---

[1]We note that the defense filed a motion for new trial regarding the trial court's ruling denying Defendant's request to sever the charge of resisting an officer. The transcript of the hearing indicates this motion for new trial was submitted without argument. In ruling, the court noted that the charge of resisting an officer was not read to the jury, and when presented with the opportunity, neither party chose to offer additional argument regarding that charge. The court further stated there had been no prejudice whatsoever to Defendant, and it denied the motion for new trial.

[2]While *Crochet* involved a raised issue of improper consolidation of charges, not misjoinder, we find that the supreme court's comments regarding misjoinder are pertinent to the present case.

3

In *State v. Turner*, 04-1250 (La.App. 3 Cir. 3/2/05), 896 So.2d 286, *writ denied*, 05-871 (La. 12/12/05), 917 So.2d 1084, this court severed a misdemeanor conviction from the defendant's appeal of two felony convictions. This court ordered the defendant to file a writ of review regarding the misdemeanor conviction in compliance with the Rules of Court. This court noted that the defendant did not make any specific arguments regarding the misdemeanor conviction. Consequently, this court considered the notice of appeal as a notice to file a writ of review within thirty days of its opinion, if the defendant desired to seek review of the misdemeanor conviction.

In this case, Defendant does not raise any assignment of error regarding the misdemeanor conviction. Accordingly, we follow the holding in *Turner* and sever the misdemeanor conviction from the appeal. We also order Defendant to file a writ of review regarding the misdemeanor conviction in compliance with the Uniform Rules—Courts of Appeal, if he so desires.

Third, the record does not indicate that the trial court advised Defendant of the prescriptive period for filing an application for post-conviction relief as required by La.Code Crim.P. art. 930.8. Thus, we direct the trial court to inform Defendant of the provisions of article 930.8 at resentencing.

Finally, there is a potential error patent regarding waiver of the right to counsel. "At each stage of the proceedings, every person is entitled to assistance of counsel of his choice, or appointed by the court if he is indigent and charged with an offense punishable by imprisonment." La.Const. art. 1, § 13. Louisiana Code of Criminal Procedure Article 514 provides:

> The minutes of the court must show either that the defendant was represented by counsel or that he was informed by the court of the defendant's right to counsel, including the right to court-appointed counsel, and that he waived such right.

4

The minute entry of October 26, 2012, indicates a hearing on Defendant's *pro se* motions was held. The minute entry reflects counsel for Defendant was present. However, the trial court granted Defendant's motion to "recuse" his attorney. Additionally, the minute entry reflects that the trial court questioned Defendant about self-representation, and the trial court found that Defendant knowingly and intelligently waived his right to counsel.

The minute entries of voir dire and the trial indicate Defendant represented himself, and an attorney was there to assist him. A review of the transcripts of these proceedings indicates although an attorney was present, Defendant represented himself, and the attorney occasionally advised Defendant. The transcript of voir dire indicates Defendant briefly spoke with counsel in private. The transcript of trial indicates during jury deliberations, an attorney, Ms. Harris, standing in as "friend of the court," objected to photos of Defendant being shown to the jury. Prior to trial, an attorney assisting Defendant questioned the trial court as to how the misdemeanors would be presented during the trial. Additionally, Ms. Harris and Mr. Dixon, standing in as "friends of the court" discussed the jury's questions asked during deliberations.

The minute entry of sentencing and the transcript of the sentencing proceeding indicate Defendant requested and was granted his request to be represented by counsel; thus, at sentencing, there was no error patent regarding waiver of counsel.

Violation of a defendant's right to counsel is reversible error not subject to a harmless error analysis. *State v. Haider*, 00-231 (La.App. 3 Cir. 10/11/00), 772 So.2d 189, *State v. Santos*, 99-1897 (La. 9/15/00), 770 So.2d 319.

In *Santos*, 770 So.2d 319, the court explained in pertinent part:

5

> A trial judge confronted with an accused's unequivocal request to represent himself need determine only whether the accused is competent to waive counsel and is "voluntarily exercising his informed free will." *Faretta*, 422 U.S. at 835, 95 S.Ct. at 2541. In this context, "the competence that is required of a defendant seeking to *waive* his right to counsel is the competence to waive the right, not the competence to represent himself." *Godinez v. Moran*, 509 U.S. 389, 399, 113 S.Ct. 2680, 2687, 125 L.Ed.2d 321 (1993) (footnote omitted).

*Id.* at 321.

In this case, the minute entry of October 26, 2012, reflects Defendant and the trial court discussed Defendant representing himself. The minute entry states in pertinent part:

> Pro Se Motion to Recuse Attorney is taken up. The Court questions the defendant as to representation. The defendant indicates to the Court that he has a sore throat and cannot speak. The Court questions the defendant as to whether he wants Mr. Coward to continue to represent him and the defendant nods his head no. The Court questions the defendant as to whether he wants to represent himself and the defendant nods his head yes. The Court questions the defendant as to whether he wants to upset today's proceedings and the defendant nods his head yes.

> The Court instructs the Sheriff's Office to evaluate the defendant at the jail and determine if his sore throat is legitimate. The Court allows the defendant to write the Court notes. Ms. Hawkins objects to proceeding today without proof that the defendant cannot speak. The defendant submits a note to the Court, waiving all motions set for today and requesting a Speedy Trial. The Court questions the defendant if he wants as [sic] Jury Trial and the defendant nods his head yes. The Court questions the defendant as to representing himself. The Court finds the defendant knowingly and intelligently waives his right to counsel and can represent himself.

Because the minute entry does not clearly set forth that the trial court advised Defendant of his right to counsel or court appointed counsel as required by La.Code Crim.P. art. 514, we examined the transcript of the October 26 proceeding. The transcript provides in pertinent part:

> [BY THE COURT]: At this point, Mr. Debarge, just for the record, you'd appeared before me originally in RC court before the assignment. At that time you indicated you wish to represent yourself and I found it appropriate to do so. You appeared then, I'm not sure,

6

probably within the month, shortly after your arraignment, and indicated you wished to have counsel appointed. I did appoint the PDO's office and because you're in my division that means that would be Mr. Coward. That's the way that they have the individuals allocated. I've received correspondence from you indicating that you wish to discharge Mr. Coward and I'm not certain if you wish to represent yourself or what your intentions are, but we need to address that first before we get into the substantive motions. Do you wish Mr. Coward not to represent you? You may speak. We're not going to tape your mouth. You have laryngitis?

MR. DEBARGE:

[Writes note to the court]

THE COURT:

Let's see. "I have extremely sore throat, too painful to speak." It's going to be difficult then to do these motions today unless you have counsel representing you who can ask the questions of the police that are here. Now, you can look at me and tell me, nod either yes or no. Do you wish Mr. Coward to represent you? Just nod yes or nod no. At this time I have no response. Do you wish to have Mr. Coward represent you, yes or no? That's a simple question, Mr. Debarge.

MR. DEBARGE:

[Nods head in the negative]

THE COURT:

You do not. You wish to represent yourself?

MR. DEBARGE:

[Nods head in the affirmative]

THE COURT:

Let the record reflect he indicated he did not and he non-verbally indicated no representation by Mr. Coward. He did non-verbally indicate affirmation that he would like to represent himself.

Now, at this time are you asking that these proceedings be upset and refixed?

MR. DEBARGE:

[Nods head in the affirmative]

. . . .

THE COURT:

I'll have to go through another colloquy with him with regard to knowing and voluntary waiver of counsel. We've been through it before and he's done so.

. . . .

THE COURT:

But first, before I do so, let me see what we're going to do about counsel. You do intend on representing yourself, Mr. Debarge?

MR. DEBARGE:

[Nods head in the affirmative]

THE COURT:

He's indicated in the affirmative. We've talked before about your age. I don't recall your educational level. Can you hold up two fingers if you finished high school? Can you?

MR. DEBARGE:

[Nods head in the affirmative]

THE COURT:

Will you do so?

MR. DEBARGE:

[Holds up two fingers]

THE COURT:

All right. Do you have any college? If so, hold up three fingers.

MR. DEBARGE:

[Holds up three fingers].

THE COURT:

He had college. Did you graduate from college? If so, hold up four fingers.

MR. DEBARGE:

[Holds up three fingers]

THE COURT:

All right. So we have some college education. Now, you understand by not having a law degree you could be at a disadvantage in representing yourself?

MR. DEBARGE:

[Nods head in the affirmative]

THE COURT:

He's indicated he understands that. You're asking at this time that you be allowed to represent yourself with regard to a jury trial having to do with both felony charges and it would be a bench trial, it would be contemporaneous with that, as to your misdemeanors.

MR. DEBARGE:

[Nods head in the affirmative]

THE COURT:

He's indicated in the affirmative. And you're willing to accept all of those potential consequences of not having counsel?

MR. DEBARGE:

[Puts both thumbs up]

THE COURT:

I need a head nod, that would be better.

MR. DEBARGE:

[Nods head in the affirmative]

THE COURT:

Wait, don't run off. We're not through. Then at this point I will find that you knowingly and have intelligently waived your right to counsel. I note now at this time you don't have counsel, but you have received your discovery.

MR. COWARD:

I handed it to him today, judge.

THE COURT:

You have a packet of that, and you feel at this time by the time -- with that discovery and having a trial date in January, you'll be ready to proceed at trial and adequately represent yourself?

MR. DEBARGE:

[Nods head in the affirmative]

THE COURT:

He's indicated the affirmative to all of those questions.

At the October 26, 2012 proceeding, the trial court did not expressly inform Defendant he had the right to counsel, including the right to appointed counsel. However, at the October 26 proceeding, the trial court explained that before arraignment, Defendant indicated his desire to represent himself, and the trial court granted the request. After arraignment, Defendant requested counsel be appointed, and the trial court granted his request. At the October 26 proceeding, Defendant again requested to represent himself, and the trial court granted his request. Finally, prior to imposition of sentence, Defendant requested he be represented by counsel,

9

and the trial court granted his request. Thus, the record indicates Defendant was aware of his right to counsel, and he exercised that right.

Additionally, at the October 26 proceeding, the trial court questioned Defendant about his educational level. Defendant indicated he had completed high school and had taken some college courses. As noted above, the record supports that Defendant understood his right to counsel as he had exercised that right. Moreover, the record indicates that the waiver of the right to counsel was voluntary and intelligently made. The record indicates that Defendant requested to represent himself at times and, at other times, wanted counsel to represent him.

Finally, the trial court advised Defendant that by not having a law degree he would be at a disadvantage. At the beginning of voir dire, the trial court explained to Defendant the process of jury selection. Additionally, in addressing the jury pool, while Defendant was present, the trial court explained that Defendant was representing himself and would be conducting direct examination, cross-examination, and voir dire. He advised since Defendant did not have a law degree, he would be at a disadvantage and if Defendant was corrected by the trial court, "don't hold it against him" because he was not familiar with the process. Additionally, before trial, the trial court gave Defendant "books" and time to think about severing the unrelated misdemeanor charges.

In *Porche*, 924 So.2d at 1232, this court explained "there is no particular formula which must be followed by the trial court in determining whether a defendant has validly waived his right to counsel. However, the record must establish that the accused knew what he was doing and that his choice was made 'with eyes open.'"

In this case, the record indicates Defendant requested subpoenas for trial be issued. Further, Defendant conducted voir dire, including requesting jurors to be

10

removed for cause and peremptorily. Defendant also requested and was granted a severance of two misdemeanor charges, and he made an opening statement and closing argument. Additionally, he made objections during the trial and cross-examined the State's witnesses. Accordingly, we find Defendant's waiver of counsel was competent and voluntarily made "with eyes open" after reviewing the record. Thus, we find no error.

## ASSIGNMENT OF ERROR:

In his counsel-filed assignment of error, Defendant argues that the evidence adduced against him at trial was insufficient to support his conviction for injuring a police animal. Specifically, he argues the evidence did not prove beyond a reasonable doubt that he caused "great bodily harm" to the police dog in violation of La.R.S. 14:102.8.

> The general test for insufficiency claims is settled:
>
> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See State ex rel. Graffagnino*, 436 So.2d 559 (*citing State v. Richardson*, 425 So.2d 1228 (La.1983)). In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

*State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371.

The relevant statute is La.R.S. 14:102.8(A), which states, "Injuring or killing of a police animal is the intentional infliction of great bodily harm, permanent disability, or death upon a police animal." Defendant argues the State did not

prove beyond a reasonable doubt that he inflicted "great bodily harm" on the police dog in this case.

Past supreme court cases have stated that no definition of "great bodily harm" existed in our jurisprudence. *State v. Hampton*, 98-331, p. 14 (La. 4/23/99), 750 So.2d 867, 881, n. 10, *cert. denied*, 528 U.S. 1007, 120 S.Ct. 504 (1999); *State v. Hart*, 96-697, pp. 15-16 (La. 3/7/97), 691 So.2d 651, 661. In another case, the first circuit stated that "serious bodily injury" and "great bodily harm" were the same under the facts before it. *State v. Owens*, 03-2838, pp. 5-6 (La.App. 1 Cir. 9/17/04), 888 So.2d 239, 242, *writ denied*, 04-2807 (La. 3/11/05), 896 So.2d 64. This court has made a similar determination. *State v. Corley*, 97-235 (La.App. 3 Cir. 10/8/97), 703 So.2d 653 *writ denied*, 97-2845 (La. 3/13/98), 712 So.2d 875.

A statutory definition of serious bodily injury is set forth in the second degree battery statute, La.R.S. 14:34.1(B)(3). In the absence of a clear definition of great bodily harm elsewhere, it may provide guidance:

> "Serious bodily injury" means bodily injury which involves unconsciousness, extreme physical pain or protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty, or a substantial risk of death.

This court has reduced a second degree battery conviction to simple battery due to insufficient evidence of serious bodily injury:

> The State was further required to prove that Defendant caused serious bodily injury. Louisiana Revised Statutes 14:34.1 defines "serious bodily injury" as involving: "unconsciousness, extreme physical pain or protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty, or a substantial risk of death.

> In the case at bar, there was no testimony that Alydia lost consciousness and no evidence of disfigurement or permanent disability; protracted loss or impairment of the function of a member, organ, or mental faculty; or a substantial risk of death. Therefore, the State was required to prove that Alydia suffered extreme physical pain.

Alydia was not asked about her injuries and, although she sought medical treatment, no medical evidence was submitted. Corporal Airhart testified that Alydia had fresh cuts and severe bruising to the face. He had no idea of the extent of her injuries but thought she should receive medical treatment. He also testified that it was difficult to understand her because of the injuries. Sergeant Rees would not leave Alydia unattended due to the lump on her head, and he was stunned at her appearance when compared with that from eighteen months earlier. Further, Officer Smith testified that the bruises on Alydia's face were darker than those depicted in the photographs admitted by the State.

Accordingly, we find that the State failed to prove Alydia suffered extreme physical pain and, therefore, failed to prove that Defendant committed second degree battery.

*State v. Broussard*, 09-1012, pp. 7-8 (La.App. 3 Cir. 4/7/10), 33 So.3d 1036, 1040.

Similarly, the fourth circuit observed:

As the appellant notes in this case, neither victim testified that the injury inflicted was anything more than a scratch. The only medical attention that Ms. Ricard received was administered by herself and consisted of antiseptic ointment and a band-aid. Dr. Gore testified all he did was wash the scratch on his arm with soap and water. Neither of the injuries could be described as serious bodily injuries. There was no testimony indicating that the victims suffered any pain, much less extreme pain. No impairment of function occurred. The evidence was not sufficient to establish the elements of second degree battery.

*State v. Clay*, 05-1467, p. 6 (La.App. 4 Cir. 10/4/06), 942 So.2d 563, 567.

In another case, this court explained:

The victim testified that certain of the bruises depicted in the photographs submitted into evidence were inflicted by the Defendant at their home in Vermilion Parish prior to another incident in Cameron Parish. The evidence is sufficient to establish, therefore, that a battery occurred in Vermilion Parish and these bruises resulted from that battery. The battery established by the evidence, however, does not rise to the level of a second degree battery because the evidence is insufficient to prove "serious bodily injury" within the meaning of the statute. There was no evidence presented that the victim lost consciousness, suffered a "protracted and obvious disfigurement," suffered a "protracted loss or impairment of the function of a bodily member, organ, or mental faculty," or was put at "substantial risk of death." The question becomes, therefore, whether the injuries inflicted caused "extreme physical pain."

While we do not doubt, viewing the evidence presented, that the Defendant's actions caused pain to the victim, we find no testimony that supports a finding of "extreme physical pain" as contemplated by the statute. In *State v. Helou*, 02-2302 (La.10/23/03), 857 So.2d 1024, 1029, the court stated the presence of blood alone does not constitute serious bodily injury and noted that it "cannot infer that the loss of blood is tantamount to 'extreme physical pain.' " The court further noted that it "cannot infer that a punch in the nose, without more evidence, is sufficient to support a conviction of second degree battery." *Id.* Likewise, in the case before us, we find the Defendant hit the victim in Vermilion Parish, but there is no evidence that the victim experienced "extreme physical pain."

*State v. Touchet*, 04-1027, pp. 10-11 (La.App. 3 Cir. 3/9/05), 897 So.2d 900, 907-08.

In the present case, Dr. Karyn Goeckel, the veterinarian who treated Barry, testified at trial. When she examined Barry, she found two abrasions near his eye. While testifying, a pertinent colloquy from her cross-examination follows:

Q      Dr. Goeckel, I just want some clarification here. You have a number of boxes marked and one of them says "pain score," and you have "AOCO." Could you tell me what that means?

A      Okay. That would be my assessment of how painful the dog was. The A score would count for the acute status, and the C score would account for a chronic ongoing process. I scored Barry a zero and a zero, which means that when I examined him he did not seem very painful.

Q      Okay. And I just want to reclarify your note that says, "started when tried to get out of cage." Do you mean that -- did you infer or was it your understanding that the injury was initiated or originated from the animal trying to get out of a cage?

A      The entire statement there I have set off in parentheses, and the entire statement says, "Started when tried to get out of cage, then struck by a suspect during a bite;" that would be something that I was told by the officer that brought the dog in.

Q      Okay. Thank you. The antibiotics you prescribed, was there any infection present at the time or that was a preventative medicine?

A      That would be to prevent infections since there are raw, open wounds on the dog.

Q      Okay. So, you didn't put any sutures or staples?

14

A    These type of wounds wouldn't have required any stitches or staples.

Q    Okay.  Have you seen the dog since for any issues?

A    I have seen the dog since for some routine care.

Q    Were there any follow-up problems with this?

A    I did not see this patient for any follow-up on these injuries.

Q    Okay.  So, when you saw the dog again, there were no problems with these injuries; correct?

A    Correct.

Q    Okay.  Thank you.

Additionally, the K-9 officer, Corporal Michael Treadway, testified about Barry's treatment:

Q    Where did you take the dog? Where did you take him?

A    I took him to University Animal Clinic. That's where we take all of our dogs.

Q    But prior -- this was a few days later?

A    About two days, I believe.

Q    So, what treatment had been provided to him between the date of the injury and the actual treatment from the vet's office, veterinarian's office?

A    I'm sorry, reask the question, please.

Q    Was any sort of treatment rendered to K-9 Barry right after, other than what you just described about the compression on his eye, between that and the time you took him to the vet?

A    No, ma'am.

Q    Okay. Was he in service that whole time --

A    Yes, ma'am.

Q    -- after that?

A    Yes, ma'am.

15

Q      You continued to work with him that night?

A      Yes, ma'am.

We find that the evidence in the case before us does not support the element of "great bodily harm" similarly to how the evidence in *Broussard*, *Clay*, and *Touchet*, did not support the element of "serious bodily injury." In the context of a *Jackson* review for sufficiency, the injuries demonstrated at trial are so obviously minor that we cannot hold them to constitute "great bodily harm." Barry was able to continue to work on the date of the incident, and his handler did not seek veterinary care for him until two days later. The vet listed the dog's pain scores at zero, the injuries required no sutures or staples, and no follow-up. Such injuries do not demonstrate the element of the crime. Pursuant to *Jackson*, we find that concluding such injuries constituted "great bodily harm" did not comport with a logical or common understanding of the term.

Moreover, we find that the evidence was insufficient to demonstrate beyond a reasonable doubt that Defendant had the intent to cause "great bodily harm" to Barry. The K-9 officer testified that Defendant punched the dog "three or four times." According to the officer, the dog then released Defendant's left arm, and Defendant immediately stopped punching the animal and knelt down, essentially submitting to arrest. Thus, Defendant exerted enough force to make the dog release him but no more. His actions, combined with the minimal injuries to the animal, suggest that he lacked the intent to cause "great bodily harm" to it.

Accordingly, we find that the evidence was insufficient to find that Defendant intended to cause great bodily harm to Barry and insufficient to find that Defendant actually caused great bodily harm to Barry. As such, we reverse Defendant's conviction for injuring or killing a police animal under La.R.S. 14:102.8.

16

"The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal." The supreme court, in *State v. Poe*, 214 La. 606, 38 So.2d 359, 363 (La.1948) (on rehearing), stated the following:

> In reaching the conclusion in the instant case that a verdict of simple assault is responsive to the charge of attempted simple kidnapping, it was reasoned that '. . . all that is required is that the greater offense must include all the elements of the lesser offense in order to make a verdict of the lesser offense responsive.' We now find that this statement is not entirely accurate for, as we observed in the *Roberts* case, the test is whether the *definition* of the greater offense *necessarily* includes all the elements of the lesser. Stated in another way for practical application, this merely means that, if any reasonable state of facts can be imagined wherein the greater offense is committed without perpetration of the lesser offense, a verdict for the lesser cannot be responsive.

Injuring a police animal is defined by La.R.S. 14:102.8(A), which states, "Injuring or killing of a police animal is the intentional infliction of great bodily harm, permanent disability, or death upon a police animal." The crime of cruelty to an animal is defined by La.R.S. 14:102.1, which states in pertinent part:

> A. (1) Any person who intentionally or with criminal negligence commits any of the following shall be guilty of simple cruelty to animals:
>
> . . . .
>
> (b) Torments, cruelly beats, or unjustifiably injures any living animal, whether belonging to himself or another.
>
> . . . .
>
> (h) Injures any animal belonging to another person.

Any violation of La.R.S. 14:102.8 would also violate La.R.S. 14:102.1. Therefore, pursuant to *Poe*, cruelty to an animal is a lesser-included offense for injuring a police animal.

After a thorough review of the evidence in the record, with consideration that a jury found Defendant guilty of the greater offense, we enter a responsive

17

verdict that Defendant was guilty of cruelty to an animal under La.R.S. 14:102.1, and we remand the case for sentencing.

## *PRO SE* ASSIGNMENT OF ERROR NO. 1:

In his first *pro se* assignment of error, Defendant argues the jury was improperly exposed to knowledge of a stalking charge which was dismissed and to alleged violations of protective orders which were severed. However, our review of the trial transcript indicates Defendant did not make this argument in the trial court. Thus, the argument was not properly preserved for review. *State v. Chesson*, 03-606 (La.App. 3 Cir. 10/1/03), 856 So.2d 166, *writ denied*, 03-2913 (La. 2/13/04), 867 So.2d 686.

We acknowledge that on January 22, 2013, Defendant stated in open court that he had no objection to trying all of the pending charges together. The next day, after consulting with advisory counsel, Defendant requested severance of the charges, and the court severed one docket number over the State's objection. Thus, Defendant received partial relief and did not raise the present issue, jury taint, at a time when the trial court was in a position to grant relief, if appropriate.

After the conviction, one of the advisory counsels enrolled and apparently filed two motions for new trial, along with a motion for post-verdict judgment of acquittal. In one of the motions for new trial, Defendant apparently argued that he was prejudiced by the simultaneous trial of the felony at issue with a misdemeanor charge of resisting an officer. However, his current argument addresses other charges that were ultimately dismissed, not the charge of resisting an officer.

Therefore, neither Defendant's motion to sever nor his motion for new trial were preserved for appeal.

## *PRO SE* ASSIGNMENT OF ERROR NO. 2:

In his second assignment of error, Defendant complains that the arrest warrant submitted into evidence was inadmissible. He does not state why it would be inadmissible, although he mentions that it was based upon the dismissed stalking charge. Defendant tried to raise a similar argument below but did not do so until sentencing.

As the trial court observed, the warrant was admitted at trial, without objection. As the warrant was entered without objection, the issue of its admissibility was not preserved for review. La.Code Crim.P. art. 841.

## *PRO SE* ASSIGNMENTS OF ERROR NOS. 3 & 4:

In his third assignment of error, Defendant argues that by dismissing the stalking charge, the State eliminated any "possibility of just cause for that arrest." In his fourth assignment, he argues his convictions for injuring a police animal and the misdemeanor charge of resisting an officer were invalid as "fruit of the poisonous tree." He made a similar "poisonous tree" argument below but not until sentencing. In his opening statement, Defendant implied the warrant was defective. However, our reading of the trial proceedings indicate that he did not adduce evidence to support or further his argument. His closing argument was a general assertion of freedom against government authority.

Although Defendant did not develop his argument, he did make it known. Thus, we will address the issues out of an abundance of caution.

The State's decision to dismiss charges months after an arrest does not inherently affect the validity of the arrest. Defendant cites no law to the contrary, and this court has found none. Notwithstanding this lack of law on the matter, we observe that even an arrest based on a recalled warrant may be valid. *See, e.g., Domino v. Crowley City Police Dept.,* 10-1244 (La.App. 3 Cir. 5/25/11), 65 So.3d 289, *writ denied*, 11-1339 (La. 9/30/11), 71 So.3d 288. Also, a subsequent finding

that a statute is invalid does not necessarily invalidate an arrest based on that statute. *See, e.g., State v. Duheart*, 13-1105 (La. 6/14/13), 120 So.3d 239. Thus, a subsequent dismissal of the underlying charges would not be fatal to an arrest warrant, and this aspect of Defendant's argument lacks merit.

Any related issues, such as whether the police officers acted on the warrant in good faith, were not raised timely and thus not preserved for review. Further, the failure to timely raise such issues in the trial court leaves this court with no practical means of reviewing them.

## *PRO SE* MOTION TO EXCLUDE:

In a *pro se* motion filed on November 14, 2013, Defendant argues that "numerous letters" he wrote were improperly included in the appellate record. He complains that the letters were not offered as evidence and appear in the record only to prejudice his case in this court. Defendants' letters are customarily included in appellate records. However, unless such letters are part of the trial record, or are themselves at issue on appeal, this court does not review them and has not reviewed the letters in this particular case. The motion lacks merit and is denied.

## DECREE:

The evidence adduced at trial did not demonstrate beyond a reasonable doubt that Defendant inflicted "great bodily harm" on a police animal, as required by La.R.S. 14:102.8 nor that Defendant acted with the intent to inflict "great bodily harm." Therefore, Defendant's conviction and sentence for injuring a police animal is vacated. However, after reviewing the evidence, we find that the state has proven that Defendant was guilty of cruelty to an animal under La.R.S. 14:102.1, a responsive verdict to La.R.S. 14:102.8. The case is remanded for resentencing at which the trial court is directed to inform Defendant of the

20

provisions of La.Code Crim.P. art. 930.8. We sever the misdemeanor conviction from the appeal and order the Defendant to file a writ of review regarding the misdemeanor conviction in compliance with the Uniform Rules—Courts of Appeal, if he so desires.

**CONVICTION AND SENTENCE VACATED; RESPONSIVE VERDICT ENTERED; REMANDED FOR SENTENCING ON RESPONSIVE VERDICT AND WITH INSTRUCTIONS.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules– Courts of Appeal, Rule 2–16.3.